## CAREY vs. McDOUGALD'S ADM'R.

1. Affidavits cannot be received in the Supreme Court, to contradict the certificate of a probate judge, as to the time when an appeal was taken from his decision ; but when the officer only certifies that an appeal was taken on a specified day, and " that A. E. is the security of said appellant for the costs of said appeal," affidavits may be received to show that the security was not given at the time when the appeal was taken ; and when such affidavits are filed, a special *certiorari* will be awarded, on motion, requiring the probate judge to certify the time when the security was executed and lodged in his office.

2. Security for the costs of an appeal cannot be taken in the Supreme Court ; if the security is not given in the primary court, the appeal will be dismissed.

APPEAL from the Court of Probate of Russell.

THE appellant filed a claim against the estate of Daniel McDougald, deceased, which had been previously declared insolvent ; and his claim having been rejected, he took an appeal from the decision of the probate judge. The probate judge, in his final certificate appended to the transcript, certifies that his decree was rendered on the 14th of March, 1853, " and that an appeal was taken on the 2d day of April, 1853, by the plaintiff in said cause, to the Supreme Court of the State of Alabama, from said decision, and that Allen Eiland

is the security of said appellant, for the costs which may accrue against him on said appeal."

The appellee now moves to dismiss the appeal, or for a special *certiorari* to perfect the certificate of the probate judge ; and in support of his motion his counsel submit affidavits, which are met by counter affidavits on the part of the appellant's counsel. The motion does not appear to have been entered on the motion docket ; but the opinions and briefs show what the motion was, and there is an entry on the minutes of the court awarding a special *certiorari* on motion of the appellee's counsel.

SAML. F. RICE, with whom was GEO. D. HOOPER, for the motion :

The question is, whether any valid appeal was taken within thirty days after the determination of the issue. The existence or non-existence of a valid appeal must be determined under section 3041, in which there is a clear and positive prohibition against any and all appeals except those taken in the mode therein prescribed. The party may take an appeal by " giving bond to supersede the execution of the decree," or " security for the costs of such appeal, to be approved by the clerk," &c. ; but he must make his election between the two modes, and actually perform one of those essentials, *before* an appeal can be taken by him : it is an essential pre-requisite to the existence of a valid appeal, that the party should give the prescribed bond, or give security for the costs to be approved as prescribed.—Langley v. Warner, 1 Comstock's R. 606 ; Parker's Appeal, 15 N. H. 24 ; 2 Greene's (Iowa) R. 91 ; 12 U. S. Dig. 44, § 179. If the prescribed bond or security is given after the day on which the appeal is taken, the appeal is not valid. It is certain that no such bond, nor any such security, was given in this case within thirty days after the rendition of the decree. . The authority to approve the security is conferred by law on the clerk, register, or judge of probate, but upon no other person. This approval is a judicial act, and must be done at the time the appeal is taken : an approval after the appeal is void.—22 Ala. 361 ; 22 Vermont R. 632. Claiming an appeal according to statute, is not an appeal.—15 N. H. 24.

The clerk, register, or judge of probate, must certify the fact that an appeal was taken, and the time when, " as part of the record." The certificate to this transcript clearly shows, that the fact that an appeal had been taken, and the time when, is not " a part of the record" in the court below ; that is stated as independent matter, not as matter of record.—Pickering v. Mizner, 4 Gilm. 334. There can be no valid appeal, without record evidence in the primary court of the fact, and of the time when it was taken. The certificate of the probate judge to the record is no part of the record of the court below.

The Supreme Court cannot, in any case, take an appeal bond, or security for the costs, nor allow it to be here taken. The law confers the power on the primary court alone. But if this court could, in any case, allow such bond or security to be here given, it would be a case where the time limited for appealing had not expired, and where the appellee made no objection, as in the case of Stevenson v. Reeves, at the last term. After the time for appealing has expired, the Supreme Court certainly has no power to allow such bond or security to be here given : to do so would be to violate the plain provisions of the statute, and extend the time fixed by law within which appeals may be taken. When the time for taking an appeal is fixed by statute, no court can extend the time, either directly or indirectly.—9 Paige 572 ; 10 ib. 615 ; 11 ib. 532.

An appeal, in a civil suit, is a proceeding unknown to the common law, and does not exist in a court of common-law jurisdiction unless expressly conferred by statute : when given, it must be regulated entirely by the provisions of the statute. 3 Bouv. Inst. 70 ; 7 Pick. 320 ; 3 Ham. 277 ; 6 Peters' Rep. 471, 777. In New Hampshire, there is a statutory provision, enabling the appellate court, on petition, to allow an appeal to any person who was "prevented from appealing," within the limited time, " by mistake, accident, or misfortune, and not by his own neglect."—15 N. H. 24. And in the amended code of New York there is a similar provision.—5 How. Prac. Rep. 310, 422. This amendment was suggested by certain decisions, referred to in the case last cited, which sustain the positions for which the appellee here contends, and admit the correctness of the decisions cited from 9th and 10th Paige,

*supra.* In our code there is no such provision ; and this court, therefore, has no such power.

As the right of appeal is given only on the performance of certain specified conditions, there can be no valid appeal until those conditions are performed : nothing short of an entire performance of the condition can make the appeal effectual. Johnson v. Barber, 4 Gilm. R. 1 ; 18 Ala. 495 ; 2 Dall. 317. And as the *mode* is particularly prescribed by the statute, it must be strictly pursued.—5 How. Prac. R. 114 ; 15 N. H. 24 ; 4 Gilm. R. 1 ; 1 Comstock's Rep. 606 ; 6 Peters's Rep. 470, 777.

The failure of the party desiring the appeal to apply also for a citation to the appellee, is also fatal to the appeal in this case, as no citation has, in fact, been issued. The provisions of sections 3018, 3022, and 3020, clearly show that a citation is necessary; and must be returned to the Supreme Court, and that it is not the duty of the clerk to issue it unless "application" is made for it.—5 How. Prac. R. 114 ; Yeaton v. Lenox, 7 Peters' R. 220.

On such a motion as this, the certificate of the clerk is not conclusive to give this court jurisdiction, nor to prevent it from receiving other evidence, as to matters about which the record shown by the transcript is silent. If the certificate is evasive, artful, or incorrect, it surely ought not to be allowed to defeat the law : there must be some mode of exposing its incorrectness, and thus preventing parties from litigating in this court " in fraud of its jurisdiction."—22 Ala. 814 ; Bradford v. Bush, 10 *ib.* 274 ; Hall v. Hrabrowski, 9 *ib.* 278 ; 3 Phil. Ev. 799, 800.

WHITE & PARSONS, *contra :*

The judge of probate is authorized by law to grant the appeal, take the bond, and certify the fact that the appeal was taken, as well as the time when it was done ; and this certificate becomes a part of the record, is conclusive of the facts stated in it, and gives this court jurisdiction of the cause.— Code, § 3016 ; Bartlett & Waring v. Lang, 2 Ala. 163 ; see, also, sections 1891, 1898, 1888, and 3041 of the Code, as to the authority of the clerk and the mode of taking appeals.— The Supreme Court cannot try a question of fact, nor indeed

any question, *de novo :* its jurisdiction is appellate only. How is the fact of an appeal to be ascertained, if the clerk's certificate is to be assailed. The appellant has the right to contest the statement " that there has been no appeal taken ;" and what tribunal is to try the question ? in what way is evidence to be taken? when heard? and how are witnesses to be examined? This court will not undertake to do it.—Weir v. Hoss, 6 Ala. 881.

Records import absolute verity, and cannot be contradicted.—3 Black. Com. 331 ; 1 Coke's Inst. 117, 260 ; Holford v. Alexander, 12 Ala. 280 ; 7 Cranch 484 ; 4 Paige 508 ; 19 Verm. 427 ; 17 *ib.* 302. Affidavits cannot be received to contradict the positive statements of the record.—Swartz v. Barnes, 11 Illinois R. 89 ; 16 Johns. 55 ; 2 M. & Sel. 566 ; Carroll v. Pathkiller, 3 Per. 252. The sheriff's return to process cannot be contradicted.—Clarke v. Gary, 11 Ala. 98 ; Small v. Ogden, 1 Litt. 16 ; Triggs v. Sims, 3 *ib.* 130. As between parties to process and their privies, the return is usually conclusive, and the party injured by the false return must resort to his action against the officer.—Phil. Ev. (C. & H.'s Notes), vol. 4, p. 798. In all the cases referred to by the opposing counsel, as sustaining their motion to dismiss for want of an appeal bond, the fact that there was no appeal bond appeared from an inspection of the record (15 N. H. 24 ; 22 Vermont 632 ; 2 Iowa R. 91), or else the case refers to a different question ; that is, whether the court can extend the time fixed by law for an appeal (10 Paige 615 ; 11 *ib.* 529). This question does not come up in this case, and the other point is concluded by the record showing that an appeal has been taken.

If these points are ruled against the appellant, then it is insisted, that he has done all that the law required of him : he prayed the appeal, and gave the bond required by the court ; and if there was any mistake, it was a mistake of the court, which should not be allowed to injure the appellant. A court of equity would reform the bond, so as to give the appellee all the remedies upon it which he would have had if regular.—Lavender v. Lee, 14 Ala. 688 ; Gray v. Hudson, 10 *ib.* 116.

It is not necessary, under section 3016 of the Code, that

the fact of an appeal being taken should be entered on the records of the court. Parties have three years within which to appeal. After the term of the court had expired at which a judgment was rendered, and the minutes had been signed, an appeal could not be entered on the minutes of that or any subsequent term, nor could it be entered at all. The clerk is directed to certify, not the record showing that an appeal was taken, but the fact "that an appeal was taken, and the time when, as part of the record ; which certificate gives the Supreme Court jurisdiction."

CHILTON, C. J.—Appeals from the decisions of the probate judges, rejecting claims against insolvent estates, are required to be taken within thirty days from the determination of such issues.—Code, § 1888, clause 6. The issue, in this case, was determined against Carey, the appellant, rejecting his claims, on the 14th March, 1853 ; and the probate judge certifies, " that an appeal was taken on the 2d day of April, 1853, by the plaintiff in said cause, to the Supreme Court of the State of Alabama, from the decision of this court, and that Allen Eiland is the security of said plaintiff for the cost which may accrue against him (said plaintiff) on said appeal."

Affidavits have been filed in this court stating that, instead of an appeal, a writ of error, under the old practice, was sued out, and a writ of error bond was executed, within the thirty days, but no appeal was granted, and no security for cost, or bond to supersede the judgment, was given, as required by the Code.

The appellant, without waiving his objection to the reception of affidavits to contradict the judge's certificate, files, by his attorney, a counter affidavit ; setting forth that he applied for an appeal within the thirty days allowed by section 1888, and the probate judge thereupon issued the writ of error, and took the bond above mentioned.

The first question is, can we receive affidavits to contradict the certificate of the probate judge, who certifies *that an appeal* was granted by him on the 2d of April ; and this depends upon the construction to be placed upon section 3016 of the Code ; which declares, that the " judge of probate must cer-

tify the fact that such appeal was taken, and the time when, as part of the record, which gives the Supreme Court jurisdiction of the case." As the certificate of the fact that an appeal was taken, and the time when it was so taken, is made a part of the record in the cause, and the basis of the jurisdiction of this court over it, we do not well perceive how it can be open to controversy, more than any other portion of the record of which it forms a part. True, the clerk, register, or judge of probate, in giving a certificate, acts as a ministerial officer—the custodian of the records of their respective courts; but it is competent for the Legislature to declare the effect which their certificates shall have, and to place them upon the same footing with records, which import absolute verity, and may not be controverted except for fraud. Such, we think, is the effect of the section above quoted.

But section 3041 declares, that "no appeal can be taken, without giving bond to supersede the execution of the judgment or decree, unless the appellant give security for the costs of such appeal, to be approved by the clerk, register, or judge of probate; the names of such securities to be certified with the record to the appellate court," &c.; and it is stated in the affidavits, that no security for the costs of the appeal, or bond to supersede, was given within the thirty days, and that no security, or bond of any kind, save the writ of error bond above mentioned, was given before the middle of June, 1853.

It will be observed, that the certificate of Judge Tate does not say that any security for the costs of the appeal was given before, or contemporaneously with, the granting of the appeal, but merely "that Allen Eiland is the security of the said plaintiff," &c.; that is, Mr. Eiland was, at the time of making his certificate, namely, on the 23d day of July, 1853, the security for the cost.

The section of the Code last above quoted (3041) is peremptory, and inhibits the granting of any appeal, without bond to supersede, or security for cost. The appeal cannot lawfully be taken without this, and if taken, cannot avail as such. It therefore becomes important, in this aspect of the case, to know when the security for cost was given, and this fact is not shown by the record. It is a fact outside of it, the proof of which does not in any way contradict, but is in aid

of the record, supplying an omission which is necessary to be supplied in order that it may have its proper legal effect, whether as showing that the appeal is valid or invalid.

We fully concur with the counsel for the appellant, that no one should be allowed to falsify the record. This is an elementary rule. So, if the sheriff returns *summoned*, the party shall not be heard to say that he *was not summoned*, for he cannot contradict the return of the sheriff. Such has been the settled law from the time of the Year Books.—See 21 H. vi, 42 ; 7 H. vii, 4, cited in Viner's Abr., vol. 18, p. 173. But conceding this rule, Viner calls us to note a diversity, and says : " But a man may say that which stands with the return ; as to say he was not summoned according to the law of the land, or not attached by fifteen days ; or he may assign error in a thing apparent, or matter in fact out of the record ; but shall not falsify the record." Here it is insisted, that a necessary step to a valid appeal is wanting—that, without which, " no appeal can be taken"—security for the cost of it.

It is claimed by the appellant, that he should be allowed to give security in this court, and that, by analogy to previous decisions under our old statutes upon the matter of appeals from justices, &c., we should not dismiss the appeal, when the party is willing to furnish the requisite security.

It is supposed, that in the case of Stevenson v. Reeves, at the last term, we furnished a precedent which would justify this view ; but this is a mistake. In that case, the security was given by the consent of counsel on both sides, and the question was not discussed or decided. We think it clear, that it was not in the contemplation of the Legislature to allow this court to take the security. It must be " approved by the clerk, register, or judge of probate." It is, moreover, apparent, we think, from the tenor of our present Code, and especially from section 3041, that the Legislature not only designed to secure the officers of court their costs, but to discourage appeals, which protract litigation oftentimes more to the injury of the parties litigant than to the advancement of justice. When we consider how often such appeals embarrass and delay the final settlement of estates, the wisdom of this policy becomes manifest. The case of Langley *et al.* v. Warner, 1 Coms. R. 606, goes strongly to sustain the view

we have here taken. That decision was made upon a section of the New York Code nearly similar to the one we have been considering, and the court held, that " to render an appeal effectual for any purpose, there must be an undertaking that the appellant·will pay all cost," &c. ; and it was added, that "a court of review ought not to encourage appeals."

Without now deciding that we will allow affidavits to controvert the certificate of the judge that a bond to supersede, or security for cost, was given when the appeal was taken, and reserving that question until it shall necessarily arise, we are of opinion, that the better· practice is, to send down a *certiorari* to the judge of probate, requiring him to certify to this court when the security for the cost of the appeal was executed and lodged in his office, so that, the record being complete, such further order may be made as shall conform to the views above expressed.

A *certiorari* will accordingly be awarded.

NOTE BY REPORTER.—The appellant, by his counsel, afterwards applied for a re-consideration or modification of the foregoing opinion, so far as to allow him to give a proper legal bond, either in this or the primary court, as this court might direct. The argument of his counsel on this application, and the opinion of the court in response to it, are as follows :

WHITE & PARSONS, for the appellant :

The jurisdiction of this court does not depend on a bond being given to secure costs. That section of the Code which authorizes appeals in this and all other cases, provides, " the certificate must show that such appeal was taken, and the time when, as part of the record, which gives the Supreme Court jurisdiction of the case."—Code, § 3016. Two things only are necessary to the jurisdiction of the court, viz., that the party made application for an appeal, and within the time prescribed by law. It is also worthy of note, that this section of the Code secures this to the party " as matter of right."

We insist there is nothing in the language of the Code, on the subject of appeals, which renders it either necessary or proper for this court to depart from the long established

practice in relation to appeals, under the provisions of the old statutes from the decisions of justices of the peace. The language of the old law is : "Any person may, within five days thereafter, appeal to the next circuit or county court, first giving to such justice bond with good security."—Clay's Digest 314, § 9. Here, by the express language of the act, the giving of bond and security is made the first in the order of events ; yet this court has invariably held, that the appeal could not be dismissed because the bond was informally or inartificially taken by the justice.—Jenkins v. Canley, 1 Stew. 61 ; Payne v. Martin, *ib.* 407–410. These cases settled the practice at an early day in this State, and this court has never departed from the spirit and letter of the decisions. Carter v. Pickard, 11 Ala. 673 ; Alford v. Johnson, 9 Por. 320 ; Lowry v. Stowe, 7 Por. 486 ; McLellan v. Allison, 19 Ala. 671. There are other decisions which can be produced, if required, showing a long and unbroken acquiescence in the above construction given to the language of the old statute.

Let us now consider the language of the Code on this point. "In all other cases,    *    *    the appellant, or some one for him, must give security for the costs of such appeal, to be approved by the judge of probate or clerk of the circuit court, as the case may be."—Code, § 1898. Is not the language here employed less stringent than that of the old law ? It merely declares, that "security must be given for the costs of such appeal," but it does not make the jurisdiction of the court depend on its being given in the first instance, much less does it declare that where a party, as "matter of right," claims an appeal within the time prescribed by law, and attempts to give bond and security, also within the time, that he shall not have the benefit of his appeal if he makes any mistake in giving a bond in proper form. Yet this is what the court is asked to hold.

This section of the Code does not say when the security must be given ; and for anything in the language employed, if it is given by the time the clerk or judge of probate is ready to certify the record, it would seem to be sufficient, for the Code only requires the officer "to certify the names of such securities, with the record, to the appellate court."—§ 1898. The law itself declares the object in requiring this bond is to

"give security for the costs of such appeal." Does not this strengthen the view just presented, that as the Code does not say when it shall be given, but does declare the object for which it is given, that if the bond is given in time to enable the clerk or judge to certify the names of the securities with the record, and thus afford the contemplated security for costs, that the law is complied with in its letter and spirit?

This court has repeatedly held, that when the Legislature, in passing an act, employed the language, or nearly so, of an English act, which had received a judicial construction by the courts of that country, that the Legislature must be understood as adopting that construction, and to have been governed by it in the passage of the act. Let us apply this well-settled rule of construction to the legislation now in question. The reasons for doing so are at least as strong, if not much stronger. Both systems are our own legislation. The old law has received a long and unbroken chain of construction, on a question of practice, which is eminently proper, when we consider the inefficient character of many of our subordinate courts, and that the ends of justice would be frequently defeated if any other were adopted.

Again ; although the law providing for the codification of the statutes of this State gave the commissioners "full latitude and authority" to revise, reform, &c., it seems that they did not think any revision or reformation on this head necessary; for in providing for appeals, they employ the language of the old statute in reference to them, but shorten the period, in order to expedite the settlement of estates, in which they may be taken. This and requiring security for "costs of said appeal" are the only changes made by the commissioners. The question, then, is, whether a change, designed to expedite trials, and to secure costs, should be construed into an intention to "discourage appeals," when the Code declares an appeal is "matter of right," and in providing for security being given, uses language less stringent, as we have already seen, than the old law employs. We cannot come to this conclusion. It seems to us to be at war with well-settled rules of construction, a long and unbroken chain of decisions, and the letter as well as the spirit of the Code.

The idea that the Legislature, or this court, should "dis-

courage appeals" is in conflict with the second section of the fifth article of the constitution. The Supreme Court is established for the express purpose of exercising appellate jurisdiction; and the power to issue writs of injunction, &c., together with such other remedial and original writs as may be necessary to give it a general superintendence and control of inferior jurisdictions, is secured to it by the constitution itself. How, then, can it be said with propriety, the Legislature intended to discourage the very thing for which this court was established? Would it be proper so to construe a law as to defeat the very thing the constitution had in view in creating the court and in providing for the exercise of its powers? It is said by Blackstone, that there are three points to be considered in the construction of all remedial statutes: the old law, the mischief, and the remedy.—Com., vol. 1, p. 60; 3 Rep. 7. By the old law, the party had a right to his writ of error in three years, and that too without giving security for costs of this court. What did the Legislature regard as the mischief? If we look to what they have themselves declared, we shall be at no loss to determine. It is clear that, as to all appeal cases, they thought security for costs of appeal should be given; and as to that class of cases under consideration, the interest of the estate and of other creditors demanded an appeal should be taken in thirty days, and they changed the law in these respects. Is this evidence of an intention to discourage appeals? If so, why not declare the intention, at once?

To refuse a party, who has claimed his appeal within the time prescribed by law, the right to correct an error in the mode or manner of giving security for the costs of the appeal, would be, in effect, to declare that, although this is an appellate court, and although he has claimed his appeal in time, he will not be allowed an appeal if there is any, the least error, on the part of the judge or clerk before whom he took it, because the Legislature intended to discourage appeals. If the judge or clerk should refuse to grant the appeal, or allow the party to take it, the effect is still the same; the party must lose his "right" secured to him by the law of the land.

The petitioner plants himself, with great confidence, upon the fact that he claimed an appeal within time, and offered to

give the requisite security; and he now prays this court to give the law such a construction as will secure his "right" to a hearing. No harm can result from this course, but much good, for it will secure, not merely to this petitioner, but all others, the opportunity of correcting a mere clerical error in a subordinate officer.

It was the duty of a clerk to issue writs of *ad quod damnum;* and an error of the clerk cannot have the effect to prejudice the right of a party suing out such a writ. Clay's Dig., p. 376; Hendricks v. Johnson, 6 Por. 473-4. In Johnson v. Hale, 3 S. & P. 334, this court held, that if an appeal was prayed for within five days, and the bond executed at any time before the issuance of an execution, it would be in time and sufficient.

CHILTON, C. J.—The points which are decided in the opinion heretofore delivered in this case, being for the first time before this court, and of much practical importance, we have given to the argument and authorities cited, on behalf of the appellant, for a re-hearing or modification of the opinion, a patient, and, we trust, thorough investigation.

It is insisted by the appellant's counsel, that the object of the provisions of the Code requiring security for costs of the appeal (§ 1898), and declaring that "no appeal can be taken without giving bond," &c., or "security for the cost of the appeal," was merely to secure the payment of the cost; and that the reason on which this court has based repeated decisions upon the old law, sanctioning the practice of supplying in the primary courts defective bonds on appeals from justices, attachment, detinue and claim bonds, applies with equal force to this court; and, as these decisions are departures from the letter of the statute, requiring such bonds to effectuate the intention, we should, in like manner, and for a similar reason, depart from the letter of the provisions under consideration, and allow security to be here given. To rule differently, it is said, would be to prescribe one rule for the primary courts, and hold to a different rule in this court, without reason for the difference.

Let us briefly examine this position. Appeals from justices of the peace are to be tried in the appellate court *de novo;* in other words, the appeal, in such case, is but a mode

9

of bringing the cause and the parties into the Circuit Court, to be proceeded with, as respects the trial, as though it had originated in that court. And as to the proceedings in detinue, trial of the right of property, and attachment suits, the primary court has original jurisdiction; and having original jurisdiction, it may take cognizance of every fact, and try and determine all issues of fact, which may legitimately arise in the progress of the cause, which may be necessary to the complete determination of the cause, and the proper administration of justice and right between the parties. If an insufficient bond has been given, in cases where a good bond is required by law, the court, in the exercise of its original jurisdiction, has power to order a good bond to be given. It can, moreover, test any issue which may be raised, as to the solvency of the obligors; and if that court takes an informal bond, to secure the cost, in cases where such security is necessary to enable a plaintiff to prosecute a suit, and refuses to dismiss the suit, or to require a good one, this court could interfere by *mandamus* to compel the Circuit Court to proceed and dismiss the suit, or require a good bond.—Barnett & Hutchison v. Warren, Hardin's Rep. 172. It is manifest, then, that the giving or supplying such bonds, by the order of the court, is a matter of original jurisdiction, which can be, and often has been, made the subject of revision in this court.

So much for the jurisdiction of the primary courts in substituting new bonds or security. Now the argument is, that, as they exercise this power, this court must do so, having sanctioned that exercise by them. But the counsel lose sight altogether of the distinction between a court of original and one of appellate jurisdiction. The constitution of this State expressly declares, that this court, except in cases otherwise provided by it, " shall have appellate jurisdiction only." The taking of bonds or security for costs, is no where made an exception in the constitution, but is expressly delegated by law to the primary courts, or to the ministerial officers of those courts. How then, without a disregard of our official obligation, could we exercise jurisdiction in taking such bond or security?

If the clerk, register, &c., shall take insufficient security, they are in certain events liable to the party injured thereby

(Code, § 3021); but who shall respond, if insufficient security shall be taken in this court, and how shall its sufficiency be tested? No mode is provided by which it can be done, for the simple reason that it was never contemplated that it should be done. But the clerk, &c., may swear the sureties as to their solvency (Code, § 3021). If a ministerial officer, or the court below, takes an informal bond, which is adjudged sufficient by the primary court, its judgment may be reversed, or, in some cases, as we have seen, its action may be controlled by *mandamus* in this court. This right of review, in the language of the appellant's counsel, "attaches to, and is inherent in, every party to such judgment," &c. Of this right, however, the suitor is deprived, whenever this court assumes original instead of appellate jurisdiction over such matters; for who shall control or revise the action of this court, in the performance of this supposed duty, should an informal or insufficient bond be taken? No one. Then the right of appeal or revision, in reference to the taking of the bond or security, is gone,—is taken away by the exercise, on the part of this court, of original jurisdiction.

Suppose judgment be rendered in the court below for a large sum, and the defendant, with the Code in his hand, goes to the probate judge and demands an appeal, and thereupon he executes a writ of error bond (say in the penalty of fifty or an hundred thousand dollars), to supersede the execution of the decree, and the judge issues a writ of error, instead of certifying an appeal; that this writ of error should be dismissed, or rather treated as a nullity, and the cause ordered to be stricken from the docket of this court; that the probate judge should then certify that an appeal was granted within the time prescribed by law, and should send up the writ of error bond as a compliance with section 3019 of the Code,—the sureties have the right to stand upon the terms of their contract; and their undertaking is, for the prosecution of *the writ of error* to effect by their principal, &c. The bond, then, would clearly furnish no security upon an *appeal under the Code.* Now, conceding that we had power to take a good bond, how shall we proceed? We are not, like the officers charged with that duty, familiar with the pecuniary condition of the parties offered as sureties, and

who, from the contiguity of their residence, may be presumed well calculated to judge of their solvency. Besides, it would be extremely inconvenient for persons to come from distant portions of the State to execute such bonds before us. If we send down to the probate judge to take a bond or security, conceding that we had power to do so, here delay might ensue and enure to the appellant, whose laches, in failing to tender sufficient security, causes it, and the object of the statute requiring a speedy determination of the matter of appeal be defeated.

Without intimating any dissatisfaction with the decisions allowing bonds to given in the primary courts possessing original jurisdiction, we are satisfied such decisions are wholly inapplicable to this, an appellate court merely.

But to recur to the statute: Section 1898 of the Code requires security for costs to be given, and the names of the securities to be certified by the probate judge, in cases of the kind before us. Section 3041 is general in its terms, and applies to this, as to all other cases of appeal, and declares that "No appeal can be taken without bond," &c., or "security for costs of the appeal, to be approved by the clerk, register, or judge of probate," &c. Here is a plain, simple, unambiguous declaration of the legislative intention that an appeal shall not be taken without security for costs. We are aware of no rule of construction, which would authorize us in holding that an appeal can be taken without security, when the Legislature, in the most simple, unambiguous terms, declares that no appeal can be so taken. Mr. Dwarris, in his excellent treatise on Statutes, says : "Where the Legislature has used words of a plain and definite import, it would be very dangerous to put upon them a construction which would amount to holding that the Legislature did not mean what it has expressed. * * The fittest course, in all cases where the intention of the Legislature is brought in question, is, to adhere to the words of the statute, construing them according to their nature and import in the order in which they stand in the act. The most experienced and enlightened judges have for some time lamented the too frequent departure from the words of the act by which a case is governed, and themselves hold it much the safer course to adhere to the words of the statute,

construed in their ordinary import, than to enter into any inquiry as to the supposed intention of the parties who framed the act. * *  They are not to *presume* the intentions of the Legislature, but to *collect them* from the words of the act, they having nothing to do with the policy of the law."  " This," he adds, "is the true sense in which it is so often impressively repeated, that judges are not to be encouraged to direct their conduct by the crooked cord of discretion, but by the golden met-wand of the law."—Dwarris on Statutes, 703.

It may be that the Legislature intended solely by this provision to secure the officers of court ; but concede that such was the design, yet it would be clearly competent for that body to make the giving of such security an indispensable pre-requisite to a valid appeal, without which " no appeal can be taken."

If the appeal could avail for any purpose, without security, then it would be in the power of the parties, or their attorneys, to dispense by consent with security in any case ; and this furnishes a substantial reason, as we think, for making the requirement peremptory, for the officers of court might otherwise go unsecured in their cost.

We think, furthermore, that it may well be presumed that the Legislature intended this provision for securing the costs as a check upon frivolous or unfounded appeals, which, without it, might be resorted to by litigious insolvents with impunity, to the embarrassment and prejudice of good citizens, and, it may be, as the means of obtaining money as the price of their peace.  We would not be understood as intimating that the case under consideration is of that character ; we know it is not.

An examination of the authorities will show, that the practice we here adopt obtained in New York under a similar statute (1 Coms. 606), in Kentucky under a statute less stringent in its requisitions (7 Mon. 117 ; 3 Dana 46), in Illinois (4 Gilm. 334), in Virginia (7 Gratt. 374), and indeed in every State where we can find the question has been made upon analogous statutes.

We have but to add, from a more thorough investigation, that we have increased confidence in the correctness of our former opinion, to which we adhere.