158 So.2d 90

Sara Lee SCROGGINS

v.

ALABAMA GAS CORPORATION.

6 Div. 589.

Supreme Court of Alabama.
Feb. 21, 1963.

Rehearing Denied Dec. 12, 1963.

Harry B. Cohen, Birmingham, for appellant.

John H. Morrow and White, Bradley, Arant, All & Rose, Birmingham, for appellee.

LIVINGSTON, Chief Justice.

This is an action at law by Sara Lee Scroggins against Alabama Gas Corporation, a public utility corporation, to recover damages for the wrongful taking of a gas stove by defendant, and conversion of the stove, for wrongful detention (detinue), for trespass to property, for wrongful invasion of privacy, for breach of contract, and for money had and received.

The original complaint contains eleven counts, some of which claim punitive damages, the count in detinue was later withdrawn.

The defendant demurred to the complaint and the trial court sustained the demurrer to the counts for invasion of privacy. The demurrers to all other counts were overruled. An amended demurrer was also overruled except to the invasion of privacy counts.

The defendant filed Pleas 1 to 5, inclusive. Pleas 1 and 2 were the general issue. In essence, Pleas 3, 4 and 5 stated that the stove had been repossessed from the plaintiff by defendant under a contract variously designated in pleas as a "contract for sale," "conditional sales contract," and "lease-sale contract," which had been signed by plaintiff on the purchase of the stove. The pleas asserted that plaintiff had become delinquent in payments and the repossession was authorized under the contract.

Plaintiff's demurrers to defendant's pleas were overruled.

Plaintiff filed Replication Nos. 1 to 9, inclusive. In Replications 1 and 2, the plaintiff joined issue on Pleas 1 and 2 of the defendant (general issue), and made specific Replications 3 to 9 to defendant's Pleas 3, 4 and 5. The demurrers to Replications Nos. 3 to 9 were sustained, and plaintiff filed amended Replications 10 to 14, inclusive. Defendant's demurrer was sustained to amended Replications 10 to 13, but were overruled as to Replication No. 14.

Replication 14 alleged, in substance, that, under the contract, the defendant had an option on default of the purchaser (a) to declare the entire amount unpaid due, and to elect to sue for that amount, immediately vesting absolute title in the purchaser, or (b) to repossess the stove; that on August 28, 1956, plaintiff filed a debtor's petition in United States Debtor's Court under Chapter XIII, Sec. 622, as amended, of the United States Bankruptcy Laws, for a composition of her debts; and that defendant was not listed as a creditor in the petition; that on January 4, 1957, the defendant filed a sworn proof of claim against the plaintiff in the above court to recover the balance of the purchase price on the stove; and requested the court to increase the debtor's payments into court to insure its preference; that on January 11, 1957, the Debtor's Court ordered that payment of the defendant's claim be suspended pending efforts to replace the plaintiff's stove with a less expensive stove, and that when the reduction of the claim was so accomplished, the defendant was to be included in the proration of present payments; that on August 2, 1957, the Debtor's Court

ordered that the defendant be excluded from the plan of composition of the plaintiff's debts, and that defendant was given release to deal directly with the plaintiff; that on August 14, 1957, the defendant repossessed the stove without the plaintiff's knowledge or consent; that the foregoing acts constituted an election to sue under the contract, thereby vesting absolute title in the plaintiff, and the conduct of defendant in repossessing the stove was a "breach of said contract and was wrongful as alleged."

The defendant joined issue on Replication 14 and filed an additional Plea No. 6. In Plea 6, the defendant averred that the plaintiff was indebted to it in the sum of $238.28, the unpaid balance on the stove, and offered to set off against the plaintiff's demands that amount. Plaintiff's demurrer to Plea 6 was overruled.

In reply to Plea 6, the plaintiff filed Replications 1 to 5, inclusive. Replications 1, 2 and 3 were the general issue. Plaintiff's Replications 4 and 5 to Plea 6 averred that the defendant had repossessed the stove and cannot now enforce the payments of the balance of the purchase price by setoff, "as the assertion of either right is an abandonment of the other." Defendant's demurrers to Replications 4 and 5 were sustained.

Issue being joined, a trial by jury resulted in a verdict for the defendant.

Plaintiff filed a motion for a new trial, asserting many grounds. The motion was overruled and the plaintiff took this appeal.

There is little or no dispute relative to the following facts in the case:

On December 16, 1955, the plaintiff entered into a sales contract with the defendant for the purchase of a Universal Range stove at a price of $336.36. Plaintiff was given a trade-in allowance of $25 for her coal stove and paid $5.00 down in cash, leaving a balance of $306.36, which she was to pay off in 36 months in installments of $8.51. The pertinent conditions of the contract provided that upon default in payments, the defendant could at its option either "(1) without any previous notice or demand of performance, declare the entire amount of the installments hereunder then remaining unpaid to be immediately due and payable and elect to sue for that amount due, thereby vesting the absolute title in and to said property in the 'Purchaser' or (2) without any previous notice or demand of performance and without legal process, enter any premises where the said property may be found, and take possession thereof, * * *."

The plaintiff paid eight installments and then defaulted, the last payment being made in September, 1956, for that month.

On August 14, 1957, agents of the defendant went to the plaintiff's home, disconnected the stove, and removed it from the plaintiff's premises. The evidence is in dispute as to whether anyone in the plaintiff's household opened the door for the defendant's servicemen. The evidence is also in dispute as to whether or not the defendant's agents removed a screen door in order to remove the stove.

There are 38 assignments of error, many of which are not argued in brief and are, therefore, waived. We will treat the assignments of error in the order in which they are argued in brief.

Before proceeding to a discussion of the assignments of error, we will dispose of a motion made by appellee to expunge and strike from the record an affidavit of appellant's attorney.

As stated, appellant filed a motion for a new trial, or a rehearing, stating numerous grounds. The motion for the rehearing, or new trial, was overruled on November 24, 1959, and this appeal was taken May 23, 1960. Two of the grounds of the motion for a new trial were predicated upon the fact that a certain ledger sheet of the defendant, defendant's Exhibit, which had not been introduced in evidence, but had been marked for identification only, was carried into the jury room by the jury, and

654

that said Exhibit contained interoffice memos, self-serving declarations, hearsay, and other wholly immaterial, irrelevant, incompetent and illegal matters. So far as the record shows, no evidence whatever was introduced to support these grounds of the motion for a new trial. However, after the appeal was perfected, and on the 4th day of August, 1960, plaintiff's attorney filed in the clerk's office an affidavit to the effect that the morning after the trial, affiant verified by Hon. "Doc" Barker, bailiff of the trial court, that said defendant's Exhibit 1 had been submitted to the jury along with the other exhibits in evidence. The appellee moved to expunge or strike this affidavit from the record.

Obviously, this affidavit was not presented to the trial court on the occasion of the hearing of appellant's motion for a new trial.

The general rule is that the appellate court cannot consider any matters outside the record. The only other place in the transcript that indicates that the inadmissible ledger sheet went to the jury is in appellant's motion for a new trial and in her Assignments of Error 22 and 23.

In the case of Powers v. David, 6 Ala. 9, an appeal was taken from a decision of a case tried before a jury in the justice of the peace court. The appellant assigned as error that the court was without jurisdiction, because the trial was held in the United States Arsenal instead of on Alabama soil. The appellant attempted to bring this alleged error before the court by submitting for the first time the affidavit of a juror to that effect. The Supreme Court in refusing to consider the affidavit said:

"* * * it is certain that no part of the record shows that the trial was had at the place asserted by the assignment, or indeed at any other place liable to exception. It is not competent for a party in an appellate court, to present a fact by affidavit which the record does not disclose. * * *"

This court has also held that affidavits cannot be received on appeal to contradict the certificate of the probate judge as to when an appeal was taken from his decision. Carey v. McDougald, Adm'r, 25 Ala. 109, nor can the matters of the court be covered by ex parte affidavits, Prinz v. Weber, 126 Ala. 146, 28 So. 10. While these two cases deal with contradicting the record, rather than supplementing it, they do provide some authority for allowing affidavits after appeal is taken.

On the other hand, it should be pointed out that in the McDougald case, supra, the court held that affidavits could be received to show that security for costs was not given at the time when the appeal was taken. The record did not show when security was given, and Chief Justice Chilton said:

"* * * It is a fact outside of it [record] the proof of which does not in any way contradict, but is in aid of the record, supplying an omission which is necessary to be supplied in order that it may have its proper legal effect, whether as showing that the appeal is valid or invalid."

The security for costs was a necessary requirement before an appeal could be taken from a probate court. The affidavit in the case at bar, however, does not supply an essential element of the appeal.

In 4A, C.J.S. Appeal and Error § 780, it is said:

"Unless they are incorporated in the bill of exceptions or some substitute therefor, the record on appeal does not include affidavits * * * filed after judgment. * * *"

To allow parties to file for the first time in the Supreme Court ex parte affidavits giving evidential support to an alleged error that does not appear in the record proper would leave this court open to a deluge of new issues being raised for the first time on appeal. The theory

of review on appeal is that the appellate court should look to the record alone to see if error was committed in the lower court. The record should not properly contain matters that have not been presented to the lower court. The proper time and place for this affidavit to have been presented was in the trial court on the occasion of the hearing on the motion for a new trial.

We will not consider the affidavit and we see no harm in expunging it or striking it from the record.

Assignments of Error Nos. 15, 16 and 17 raise essentially the same questions and are argued together in briefs of both parties. The appellant states in these assignments that the trial court erred in allowing defendant's Plea 6 to be filed and overruling the demurrers to that plea.

Defendant's Plea 6 attempted to "setoff" against the demand of the plaintiff the sum of $238.28, the unpaid balance of the purchase price of $336.36 for the gas stove, payable under the contract between the parties.

Appellant argues that this plea of setoff is not sufficient because under Secs. 350 and 351 of Title 7, Code 1940, setoffs are not allowed against demands "sounding in damages merely." The appellee contends that Plea 6 is not governed by Secs. 350 and 351 of the Code on setoffs, for it is a common law plea of recoupment. Whether Plea 6 is for setoff or recoupment is the question before the court in these particular assignments.

■ While setoff and recoupment are often treated together in the statutes and cases, there are well-defined distinctions between them. Recoupment is of common law origin, whereby setoff is entirely statutory. Since recoupment arises from common law, it is not confined to a claim "not sounding in damages." Hatchett v. Gibson, 13 Ala. 587; Grisham v. Bodman, 111 Ala. 194, 20 So. 514; Brown v. Patterson, 214 Ala. 351, 108 So. 16, 47 A.L.R.

1093; Alabama Power Co. v. Kendrick, 219 Ala. 692, 123 So. 215.

■ The subject matter of a plea of recoupment must arise out of the same transaction upon which plaintiff's claim is based. Norton v. Bumpus, 221 Ala. 167, 127 So. 907; Brown v. Patterson, supra; Alabama Power Co. v. Kendrick, supra; Craft v. Standard Accident Ins. Co., 220 Ala. 6, 123 So. 271. On the other hand, there is no prerequisite that a plea of setoff must arise out of the same transaction or contract. It is obvious in the face of these authorities that the appellee's Plea 6 must set out a claim that arises out of the same transaction that the appellant rests his cause of action upon if it is to be held sufficient.

■ It is apparent that appellee's claim rests on the contract between the parties for the purchase of the stove, appellee contending that the plaintiff has breached that contract by nonpayment. Appellant's claim is based in the main on acts committed during defendant's repossession of the stove—trespass, conversion, breach of contract, and money had and received. It can be fairly said, however, that both claims arise out of the same transaction. That transaction is the purchase of a stove and all of the ramifications of that purchase.

■ The purpose for requiring that a plea of recoupment rest upon the same transaction or contract as the plaintiff's cause of action is to prevent a multiplicity of unrelated issues of fact and law. Certainly, in this case, to allow defendant's claim of breach of contract, which is so vitally connected with plaintiff's cause of action, would be in keeping with that purpose.

The trial court did not err in overruling plaintiff's demurrer to Plea 6.

Assignments of Error Nos. 18 and 19, argued together, are based on the trial court's action in sustaining the defendant's demurrers to plaintiff's Replications 4 and 5 to defendant's Plea 6, of setoff (or re-

coupment). It is argued that the defendant has no right to setoff, or recoupment, for he has repossessed the stove. Appellant's brief properly states the law, that under a conditional sales contract, a seller must sue or repossess; he cannot do both. Appellant seems to say that since the defendant has repossessed the stove, he cannot now by a plea of setoff (or recoupment) recover the balance due.

The defendant insists that in Replication 14, the plaintiff has pleaded that the defendant has elected to sue under the contract and that plaintiff cannot now plead inconsistency in its replication to the plea for setoff (or recoupment) that the defendant has elected to repossess. The fourth ground of the defendant's demurrer pointed out this inconsistency.

■ It is a well-known rule of pleading that the averments of a replication must not contradict the averments of the complaint. That is to say, the replication must so answer the plea as to support the complaint. Brookside-Pratt Mining Co. v. Booth, 211 Ala. 268, 100 So. 240, 33 A.L.R. 417; Ex parte Hines v. McMillan, 205 Ala. 17, 87 So. 691; First National Bank of Dozier v. Henderson, 243 Ala. 636, 11 So.2d 366. It was said in the Hines case, supra:

"  *  *  * and if matter pleaded by either party does not go in support of what has been before alleged by himself, the pleading is ill, even though it might, in itself, be a good answer to the adverse allegations which immediately precede it,  *  *  *."

The question posed in this instance is whether or not there is a contradiction between the plaintiff's complaint and Replication 14 and Replications 4 and 5 to the plea of "setoff."

We think there is inconsistency in the light of the plaintiff's theory of the case.

■ Plaintiff has said in her complaint and Replication 14 that defendant had made an election to sue under the contract. She cannot now be heard to say in a subsequent pleading that defendant in a legal sense has elected to repossess. She attempts to do just this in her Replications 4 and 5 to defendant's Plea 6. In those replications, plaintiff alleges that the defendant cannot have the right to recover (in effect to sue) under Plea 6, for it has repossessed. But the contention in the complaint is that the repossession is illegal. If the plaintiff is right in the allegations of her complaint, the illegal repossession cannot affect defendant's right to sue, as he has elected to do; therefore, plaintiff cannot now be heard to say in her pleading that the illegal repossession constitutes an election, when she has previously said that filing a claim in Debtor's Court was an election to sue.

To disallow such a replication on demurrer will not lead to unjust enrichment of the defendant. If the plaintiff's theory of the case is sound, the election to sue vests title in the stove in the plaintiff under the contract, and the damages in conversion and trespass will compensate for the unlawful repossession. If the plaintiff proved the allegations of her complaint, then the defendant would have to pay damages equal to the value of the stove.

■ Appellant in her brief argues that defendant's demurrers 5 and 6 to plaintiff's Replication to Plea 6 were speaking demurrers and should have been overruled. She cites Brown v. City of Fairhope, 265 Ala. 596, 93 So.2d 419; Kalas v. MacMahon, 36 Ala.App. 238, 54 So.2d 322. This is probably true. Nevertheless, grounds of demurrer 4 properly pointed out the contradiction discussed above and failure to overrule demurrers 5 and 6 is harmless error. There is no merit in Assignments of Error Nos. 18 and 19.

■ Assignments of Error Nos. 35 and 37 concern charges to the jury in regard to the plea of recoupment. Assignment 35 deals with a written charge given at the request of defendant, and Assignment 37 deals with a portion of the oral charge. Since there is no objection or exception made to the oral charge of the trial

court, Assignment of Error No. 37 presents nothing for review. Failure to object below to an error in the oral charge of the trial court precludes review. Kearley v. Cowan, 217 Ala. 295, 116 So. 145; Powell v. State, 33 Ala.App. 323, 33 So.2d 399; Lipscomb v. State, 32 Ala.App. 623, 29 So.2d 145.

■ We have repeatedly held that when unrelated assignments of error are argued together, they are judged by the weakest assignment. In other words, if one assignment is without merit, there is no need to consider the others. Gulf, Mobile and Ohio Railroad Co. v. Sims, 260 Ala. 258, 69 So.2d 449; Taylor v. Taylor, 251 Ala. 374, 37 So.2d 645; Moseley v. Alabama Power Co., 246 Ala. 416, 21 So.2d 305; Sovereign Camp, W.O.W., v. Davis, 242 Ala. 235, 5 So.2d 480. As a consequence, the court will not consider assignment No. 35.

Assignments of Error Nos. 5, 8, 9 and 12 all complain of the trial court's action in submitting to the jury the question of whether or not the defendant had elected to sue. In effect, this assigns as error the oral charge of the trial court, and Assignments 5 and 12 refer to page 105 of the transcript where the oral charge appears.

Appellant contends that since the demurrer to her Replication 14 was overruled, the trial court decided that the defendant had made an election to sue in legal effect; consequently, there was no question for the jury, since the facts alleged in Replication 14 were undisputed.

■ This may be so, nonetheless, this court cannot review these assignments since they look to the oral charge for error, for the appellant took no exception to the oral charge. The process of review contemplates that the trial court will be given opportunity to correct any errors that it may have committed. Alleged errors in the oral charge must be specifically pointed out by objections, or exceptions, to the oral charge. Kearley v. Cowan, supra; Powell v. State, supra; Lipscomb v. State, supra.

■ Assignments of Error 6, 7, 10 and 11 are closely related to Assignments 5, 8, 9 and 12 discussed above—the attack is somewhat different. Appellant contends in Assignments 6, 7, 10 and 11 that the trial court erred in "failing to give the affirmative charge in favor of the plaintiff in conformity with its own ruling on the pleadings." These assignments place nothing for review before this court, for appellant made no request for the affirmative charge or for any other charge. Appellant cannot now predicate error on the failure of the court to give an instruction which was not asked for. Herbert v. Huie, 1 Ala. 18; 34 Am. Dec. 755; Knox v. Rives, Battle and Co., 14 Ala. 249; Williams v. State, 147 Ala. 10, 41 So. 992; Thompson on Trials, 2d Ed., Sec. 2341.

Assignments of Error 36 and 38 suggest that the trial court erred in stated portions of its oral charge. Timely objection was not made to the oral charge and nothing is presented to this court for review by these assignments. Authorities, supra.

Appellant's Assignment 34 is based on the giving of the following written charge to the jury:

"11. If you believe the evidence in this case, you cannot return a verdict for the plaintiff and against the defendant under Count X of the complaint."

■ It is, of course, axiomatic that the general affirmative charge with hypothesis may be given only if the evidence, if believed, considered most unfavorably against the party requesting such a charge, shows clearly and without dispute that such party is entitled to a verdict as far as that count is concerned. McMillan v. Aiken, 205 Ala. 35, 88 So. 135; Shipp v. Shelton, 193 Ala. 658, 69 So. 102; Morris v. Hall, 41 Ala. 510.

In the case at bar, if there is any evidence supporting the breach of contract by appellee, then the charge should not have been given. If there is no way that the evidence, if believed by the jury, could support Count X, then the trial court was correct in giv-

ing the general affirmative charge with hypothesis.

Count X complains that defendant after exercising his option by electing to sue, breached the contract of purchase by also repossessing the stove. Under the contract, the defendant upon default (by plaintiff) could either (1) sue, or (2) repossess; he could not do both. Obviously, a vital element of the plaintiff's Count X, in fact, her whole case, is an election to sue by the defendant. If there was no such election, the general affirmative charge was correctly given, for there had been no breach of contract in law, the repossessing being legal and pursuant to the contract.

Appellant's contention that defendant had elected to sue rests entirely on the filing of the proof of claim in Debtor's Court and the resultant proceedings.

■ The answer to this question lies in the nature of the proceedings in arriving at a Wage Earners Plan in Debtor's Court. The so-called "Wage Earners Plan" is controlled by Chapter 13 of the United States Bankruptcy Act, 11 U.S.C. §§ 1001–1086. In a proper sense, it is not a bankruptcy proceedings, though the two proceedings have some similarities. Chapter 13 provides for a composition or extension of the claims against a wage earner and for their payment out of his future earnings. Unlike in bankruptcy, secured as well as unsecured claims may be proved, provided real property is not the basis of the security. 11 U.S.C. § 1006. Collier on Bankruptcy, 14th Ed., Vol. 9, Sec. 2202, p. 539, comments on this section:

"The definition is significant in that the meaning of *claims* for the purposes of Chapter XIII is not restricted to unsecured claims, but includes claims secured other than by an estate in real property or a chattel real."

The Bankruptcy Act further provides that a plan "(1) *shall* include provisions dealing with unsecured debts generally," and "(2) *may* include provisions dealing with secured debts severally." (Emphasis supplied.) 11 U.S.C. § 1046.

Collier comments on this section as follows:

"A plan therefore cannot deal with debts secured by estates in real property or by chattels real, but can deal with debts otherwise secured. The plan may deal with all or any or none of such secured debts." Collier on Bankruptcy, 14 Ed., Vol. 9, Sec. 28.03, p. 654.

Also, under a Chapter 13 proceeding, the debtor must secure an acceptance from every secured creditor dealt with in the plan. 11 U.S.C. § 1051; Collier on Bankrupty, 14 Ed., Vol. 9, Sec. 29.01, p. 677.

From the above sections, it is clear that secured claims do not necessarily have to be included in the plan, and furthermore, there is no provision or requirement for a waiver of security on claims filed in Debtor's Court.

■ It can be fairly said that a Chapter 13 proceeding is an arrangement for paying off all of the claims upon the debtor, usually giving him an extension of time to do so. It ofttimes prevents the debtor from becoming a bankrupt. Logically, this is not a suit. To further support the contention that filing the proof of claim under Chapter 13 does not constitute an election to sue. Appellant cites Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595. In that case the question arose as to whether or not proof of claim based upon a stockholder's derivative suit was properly filed. The objection to the proof was that a party defendant had not been properly joined. The court said:

"* * * As we have said, the corporation is a necessary party in a stockholders' derivative suit. [citation omitted] It can be joined as a party and brought in by summons in the usual way. But the filing of a claim in bankruptcy is not the institution of a plenary suit. It is a claim against assets in the

hands of the bankruptcy court, not an action *in personam.* * * *"

The court held that the disallowance of a claim because of nonjoinder of parties was error since bankruptcy proceedings are not in personam actions. The Debtor's Court proceeding is even less of a plenary suit and should not be so interpreted.

Finally, the appellee says that even if filing a proof of claim in Debtor's Court is an election to sue, it is not binding on him, for he withdrew the claim with the permission of the court.

In Allard v. LaPlain, 152 Wash. 211, 277 P. 843, cert. den. 280 U.S. 527, 50 S.Ct. 88, 74 L.Ed..594, the court said:

"The findings show that the claim was presented by respondent to the bankruptcy court, but was permitted to be withdrawn by that court, which therefore made it as if it had never been presented or allowed."

We hold, therefore, that the filing in the Debtor's Court by defendant of the proof of claim, which was later withdrawn with the court's permission, should be treated as if it had never been filed, and should not constitute an election to sue, and no evidence supports the breach of contract.

The result is, we are of the opinion that the defendant's demurrer to Replication 14 should have been sustained. This, of course, was harmless error and it was in plaintiff's favor.

Assignments of Error 22. and 23 claim the court erred in allowing a certain ledger sheet, which was ruled inadmissible, to be submitted to the jury. We have previously disposed of these assignments of error above.

Assignment of Error 24 is as follows:

"24. The Court erred in overruling plaintiff's motion for new trial."

Where the motion for a new trial states more than one ground for a new trial, if one ground is good, the motion should be sustained. But this court will consider only the grounds for a new trial which are argued in briefs.

The appellant's brief merely states that the motion for a new trial "raised many of the points embraced in the appellant's Assignments of Error argued in this brief."

There is no merit in Assignment of Error 24.

The judgment is due to be, and is, affirmed.

Affirmed.

LAWSON, GOODWYN and COLEMAN, JJ., concur.