317 So.2d 493

**WINSTON INDUSTRIES, INC.**

v.

**The STUYVESANT INSURANCE COMPANY, INC.**

**Civ. 443.**

Court of Civil Appeals of Alabama.

June 11, 1975.

Rehearing Denied July 9, 1975.

James N. Brown, III, Birmingham, for appellant.

C. William Gladden, Jr., Birmingham, for appellee.

HOLMES, Judge.

Appellant appeals a jury verdict rendered against it and in favor of appellee in the amount of $2,950.

Appellant was the manufacturer of a mobile home sold by a retailer to Freeman Floyd, hereinafter referred to as Purchaser. Appellee is an insurance company who insured the mobile home for Purchaser and is subrogee of Purchaser.

The mobile home was purchased on December 18, 1969, by Purchaser from a retailer for a purchase price of $7,200. The retailer was a Mississippi company. However, the mobile home was delivered by the retailer directly from appellant-manufac-

turer, an Alabama business, and was then "set" up by the retailer. The Purchaser, in fact, had several dealings directly with appellant-manufacturer prior to delivery of the mobile home, e. g., picking out carpets. The mobile home was the personal residence of Purchaser.

The mobile home was insured by the appellee for Purchaser, apparently in January of 1970. Sometime during this same month Purchaser entered a hospital some two hundred miles from his home. While in the hospital Purchaser's wife spent much time with him, including some nights, and, of necessity, left the mobile home unattended.

After discharge from the hospital, Purchaser and his wife, who had been away from the mobile home for several days to be with her husband, returned home and discovered that the mobile home was saturated with water. Purchaser discovered that this flooding within the mobile home was caused by a waterline under the lavatory having come loose. This resulted in flooding the mobile home. In fact, according to testimony of Purchaser, the water reached a depth of six inches as evidenced by water stains on the curtains.

This flooding resulted in extensive damage. Purchaser testified that the carpet became discolored, the curtains had to be replaced and the floor began to buck. Additionally, in the months following the flooding, other changes in the condition of the mobile home occurred. On the side of the main entrance of the front door the outriggers gave way. This resulted in the sidewall dropping; the front door being unable to be opened or closed; and the floor beginning to cave through. In fact, in the front bedroom the bed fell through the floor. The carpet that replaced the original discolored carpet rotted out. Certain personal property within the mobile home was also damaged.

Following his discovery of the damages, Purchaser contacted both the retailer and the manufacturer-appellant and reported to them what had happened. Appellant-manufacturer sent someone out to inspect the damage. According to testimony of Purchaser, people representing appellant-manufacturer came out four or five times. Not only did manufacturer inspect the premises, but they also made several repairs, including replacing the carpet in the living room, replacing the tile in the half bath (site where the leak occurred) and the front bedroom, and also attempting to nail the buckled presswood back down.

Purchaser wrote appellee-insurance company a letter informing it of his damages. The claim was finally settled for $5,900 after Purchaser brought suit against appellee.

Purchaser testified that he purchased the mobile home for $7,200. He made thirty-three monthly payments on it, in an amount of $106.42 a month. He lived in the trailer, despite the damage to it, for three years. He eventually stopped making the payments on the mobile home. His case with the insurance company was settled shortly thereafter.

Appellee-insurance company, having settled its claim with Purchaser and, as subrogee of Purchaser, filed a petition for declaratory judgment against appellant (and other named defendants) alleging breach of express and implied warranties. The suit went to the jury on the issue of breach of express warranty resulting in the aforementioned verdict in favor of appellee in the amount of $2,850. Appeal was then taken to this court.

Appellant's argued assignments of error present three issues. The first issue raised is the contention by appellant that the verdict is against the weight of the evidence in that appellee did not prove that an express warranty existed from appellant to Purchaser. The second contention of appellant is that appellee did not prove any product or manufacture defect. The third contention is that the amount of damages is excessive in that the amount of payment

by appellee to Purchaser is unsupported by the evidence.

## I

The main contention of appellant is that appellee failed to prove that an express warranty existed from appellant to Purchaser upon which appellee, as subrogee, could rely in his claim against appellant-manufacturer. The basis of this contention is testimony by Purchaser, himself, that he did not receive a warranty nor know about one. Appellant relies on Alabama cases indicating reliance by a purchaser in order to prove an express warranty. *Landman, Halsey & Co. v. Bloomer, Wolf & Michael*, 117 Ala. 312, 23 So. 75.

Thus, the basis of this contention by appellant is that appellee, as subrogee, is erroneously being allowed to rely on an express warranty which Purchaser did not receive, and which appellant did not make in this *particular* sale to Purchaser.

Express warranties in Alabama are created in the following manners as set out in Tit. 7A, § 2–313, Code of Ala.1940 (Recomp.1958):

"Express warranties by affirmation, promise, description, sample.—(1) Express warranties by the seller are created as follows:

"(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

"(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

"(c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods· shall conform to the sample or model.

"(2) It is not necessary to the creation of an express warranty that the seller use formal words such as 'warrant' or 'guarantee' or that he have a specific intention to make a warranty, but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."

Despite the persuasiveness of appellant's argument, after a thorough review of all the evidence, this court is of the opinion that despite the fact that the purchaser did not physically receive a copy of the written expressed warranty an express warranty was, in fact, in existence and does inure to the benefit of appellee.

There is much evidence in the record to indicate the existence of an express warranty. Foremost is the response by appellant to the following request for admission by appellee.

(Appellee): "2. That there was an express written warranty on the mobile home that is the subject of this litigation. If so, product [sic] a copy or duplicate of said warranty for inspection and copying."

(Appellant): "In response to request for admissions numbered 2, *defendant admits a written warranty existed at the time of this sale*, but Floyd has stated under oath that no written warranty was given to him on the mobile home in question."

In accord with Rule 36(b) ARCP, this matter is conclusively established, to wit, that a written warranty on the subject property existed at the time of sale to Purchaser.

A copy of appellant-manufacturer's warranty was admitted into evidence.

The testimony of Ray Forrester, employee of appellant, was that appellant put a warranty similar to the one introduced into evidence by appellee in every home built and sent to a dealer, and that this was the business practice of the appellant

during the years in question. He further testified that as far as appellant was concerned the procedure would be that the warranty would be delivered by the dealer to the ultimate purchaser.

We also find that the course of conduct of appellant from the very beginning was in conformity with the existence of an express warranty. Appellant made several trips to the mobile home after being informed of the damage. On some of these trips actual repairs were made by them. There is also the testimony of Mr. Forrester that the job was conducted completely in conformity with the idea that there was a written warranty.

Even more proof of the existence of a warranty is the following paragraph from the bill of sale of the retailer to Purchaser.

"This trailer is sold as is, without warranty (except for title) and is guaranteed free and clear from all mortgages, liens, or other encumbrances, except that referred to herein as security for the within indebtedness. If the trailer sold be a used trailer, it is without warranty except of title. *New trailers bear usual factury guarantee.*" [Emphasis ours]

■ As we perceive appellant's contention, it would have us hold that even though it offered a warranty on its product, merely because the purchaser failed to receive a copy of the warranty (even if through no fault of his own) the purchaser would be barred from the protection offered by the warranty. We decline to do this, in this instance, and, accordingly find an express warranty to the purchaser. In view of the above, the trial court was not in error in allowing the introduction of appellant-manufacturer's express warranty.

Nor do we find those cases requiring reliance on the part of the purchaser applicable here.

As both counsel admit and the court concurs in, there is a dearth of cases on point.

As this court perceives it, the determining factor in this case under the newly enacted Uniform Commercial Code is not reliance by the purchaser on the seller's warranty, but whether it is part of the "basis of the bargain." See *Elanco Products Company v. Akin-Tunnell*, Tex.Civ.App., 474 S.W.2d 789; *Young & Cooper, Inc. v. Vestring*, 214 Kan. 311, 521 P.2d 281; *Hawkins Construction Co. v. Matthews Co., Inc.*, 190 Neb. 546, 209 N.W.2d 643.

In fact, it is not necessary to show any particular reliance by the buyer to give rise to such warranties. Anderson, *Uniform Commercial Code*, Vol. 1, § 2–313:18, 2d ed.

Comment 7 to § 2–313, Tit. 7A, Code of Ala.1940 (Recomp.1958), reads as follows:

"7. The precise time when words of description or affirmation are made or samples are shown is not material. The *sole question is whether the language or samples or models are fairly to be regarded as part of the contract.* If language is used after the closing of the deal (as when the buyer when taking delivery asks and receives an additional assurance), the warranty becomes a modification, and need not be supported by consideration if it is otherwise seasonable and in order (Section 2—209)." [Emphasis ours]

Certain writers have concluded that reliance is no longer necessary when a warranty can be agreed upon *after* the closing of the sale. See Texas Law Review, Vol. 53:60, pp. 63–65.

The question before us, in this instance, is whether the warranty is to be regarded as part of the contract, to wit, whether it is part of the basis of the bargain. Referring once again to the aforementioned bill of sale which states that "new trailers bear usual factory guarantee," we find it is indeed a basis of the bargain. Therefore, the trial judge properly refused appellant's required charge to the jury requiring personal knowledge.

## II

The next contention raised by appellant is that appellee failed to prove any product defect or manufacturer defect which resulted in the damage.

The argument appears to be that inasmuch as Purchaser testified he did not know how the fitting came loose the verdict is based on conjecture and speculation.

Appellant also introduced into evidence a climatological data chart which indicated freezing temperature during the period Purchaser was in the hospital and away from the trailer. The introduction of the chart is supplemented by testimony of an expert witness that the pressure seal connections used by appellant could come apart under conditions of low temperature. In brief, counsel for appellant contends that it is reasonable to speculate Purchaser's wife may have turned the thermostat down while visiting Purchaser; or that even if she did not, the extraordinarily low temperature outside the mobile home could have caused the loosening.

Thus, it appears that appellant attempts to offer a second possible cause of damage in an effort to show that, absent direct proof of the cause, the verdict is based on speculation and conjecture. We do not agree.

Purchaser testified that he found a water line had come loose under the lavatory in the half bath approximately sixty days after purchase. He had had no trouble before. The copper tube in the leaking pipe had slipped out of the fitting. Purchaser repaired the problem, himself, by buying and putting on a larger rubber grommet and screwing it on tightly. He testified he had had no trouble since. Additionally, the plumber, testifying on behalf of appellant, responded affirmatively to a question as to whether the pipe would leak if the connection were not properly tightened. We also note that Purchaser testified that as far as he knew the thermostat was not turned down while he was away and that he did not believe the pipes froze in the lavatory.

We find the testimony as set out above indicates a logical sequence of cause and effect and that more than mere conjecture alone was presented as a basis for determination. *Campbell Construction Engineers, Inc. v. Water Works and Sewer Board of the City of Pritchard, Alabama, Inc.*, Ala. App., 290 So.2d 194. See also *Central of Georgia Railway Co. v. Griffin,* 36 Ala. App. 292, 55 So.2d 218.

## III

Appellant's next contention is that appellee-subrogee failed to prove that the payment of $5,900 to Purchaser approximated the amount of damage to the mobile home.

The purchase price of the mobile home was $7,200. Purchaser testified that he was informed by counsel for appellee that appellee's agent estimated it would cost $1,243 to repair the mobile home. The final settlement, however, was for $5,900. Thus, appellant contends there was no basis for the payment of $5,900 to Purchaser.

We do not agree with appellant. The Purchaser, himself, testified that while he had no idea as to what the actual cash value after the damage would be, that, to him, it "wasn't worth much" because his family "couldn't hardly live in it." He also testified that he was informed by two other mobile trailer dealers—one a president and the other an employee—that the trailer was "unrepairable" and "too expensive" to repair.

Thus, there is evidence that the damage approximated the value of the home, itself. The measure of damages due to injury to personal property which is a total loss after accident, under the theory of this case as tried by the parties, is reasonable market value before accident, less salvage value after. *Parker v. Muse*, 47 Ala.App. 84, 250 So.2d 688.

■ Appellant, by his assignments of error 1, 4, and 6 argues that the trial court committed reversible error in its oral charges regarding the measure of damages. We find no merit in these assignments of error as no valid objection was made to the court in this regard. Failure to object below to alleged error in oral charge of trial court precluded review. *Scroggins v. Alabama Gas. Corp.,* 275 Ala. 650, 158 So. 2d 90.

All argued assignments of error which were properly raised below having been considered, the case is due to be and is, therefore and accordingly, affirmed.

Affirmed.

BRADLEY, J., concurs.

WRIGHT, P. J., concurs in part and dissents in part.

WRIGHT, Presiding Judge (concurring in part, dissenting in part.)

I specially concur in part with the decision of the majority and respectfully dissent in part.

Though I concur with the majority that under the evidence in this case the question of the existence of an express warranty was for the jury, I do not agree with certain language used in arriving at the decision of the majority. I would hold that the response of appellant, Winston, to request for admissions was sufficient for the matter to go to the jury as to the existence of the warranty.

The discussion of the requirements of the Uniform Commercial Code for the creation of an express warranty by the majority, and the application of such requirements to the evidence in this case is inappropriate. I would hold that Winston was bound by its admission that its manufacturer's warranty existed for the benefit of the purchaser. The principle of estoppel is applicable. I would not hold under the evidence in this case that an express warranty was created under Title 7A, Sec. 2–313, *Uniform Commercial Code.* The evidence is totally to the contrary.

The purchaser denied any knowledge of any warranty extended by the manufacturer. I am unable to determine how a warranty can be created without knowledge of its existence by the purchaser. Creation of an express warranty requires affirmation of fact or promise by the seller to the buyer relating to the goods, which affirmation or promise becomes part of the basis of the bargain. Such affirmation or promise must be made known to the purchaser if it is to form any basis for the bargain. Without communication in some form there can be no affirmation or promise nor can such be said to be any consideration or inducement to the purchaser for entering the bargain. An express warranty is a contract and its creation is determined by the law of contracts. An uncommunicated affirmation of fact or promise cannot be a part of a contract or form any basis for the entering into the contract. The fact that the manufacturer intends to extend a warranty to every purchaser may create a moral obligation but unless the purchaser knows of the extending or at least of the policy of extending, he could not have considered it in entering into the bargain for the purchase of the goods. If such is determined to be the law of warranty, there would be a requirement of nullification or denial of a warranty by the seller or manufacturer rather than affirmation of fact or promise.

It is with some trepidation that I concur with the majority in its decision that there was sufficient evidence of an express warranty, but I do not concur that the evidence is sufficient to create such warranty under Title 7A, Sec. 2–313, *Uniform Commercial Code.*

I cannot agree with the majority that the evidence established that there was a defect in the manufacture or design of the product.

The evidence presented was that after purchasing the mobile home, it was delivered to the purchaser by the dealer in Mississippi. It was picked up by the dealer from the manufacturer and transported a substantial distance over the highways to the place designated by the purchaser. There it was "set up" by the dealer. The dealer connected it with its water and electrical supply and presumably with sewer connection. Purchaser moved in and resided therein for about six weeks. During this time there was no problem with the particular water pipe which was later found to be loose and leaking. It was used and worked properly.

Purchaser became ill and was hospitalized some 200 miles away. His wife spent part time with him and part in the mobile home for several days. Upon leaving the hospital and returning home, purchaser found the home to have flooded at some time since it was last occupied by his wife. Examination disclosed a loose connection of a copper pipe attached to a lavatory. This apparently was the source of the flooding. The leak was repaired by the purchaser. He testified that he did not know why the pipe became loose. Neither he, nor any witness, testified as to any material fault or fault of design. He merely found a connection loose from some unknown cause.

Manufacturer presented testimony that during several nights immediately preceding the flooding there had been temperatures 10 or more degrees below freezing in the area of the home. It was further shown by a qualified witness that water pipes in trailers were susceptible to easy freezing, particularly when unoccupied with the heat unregulated. It was shown that the type connection involved would pull loose if the water in the pipe froze.

The burden of proof to establish a breach of a manufacturer's warranty is upon the buyer. 99 ALR2d 1419, 63 *Am. Jur.*2d Sec. 98, Products Liability. The doctrine of res ipsa loquitur does not apply in an action for breach of warranty. *Gardner v. Coca-Cola Bottling Co.,* 267 Minn. 505, 127 N.W.2d 557; *United States Rubber Co. v. Baur,* 8 Cir., 319 F.2d 463. The burden is on the buyer to show that there was defective material or workmanship within the scope of the warranty and such defect existed at the time the product left the custody of the manufacturer. *Shramek v. General Motors Corp., Chevrolet Motor Div.,* 69 Ill.App.2d 72, 216 N.E.2d 244; *Dufon v. Wilbur Curtis Co.,* 425 F.2d 1294, (6th Cir. 1969).

The mere proof that a fitting comes loose and leaks after the product has been delivered and used for a period of time does not alone establish a presumption or inference of a defect in manufacture. *Wear v. Chenault Motor Company, Inc.,* 52 Ala.App. 382, 293 So.2d 298; *Eversmeyer v. Chrysler Corp.,* 192 So.2d 845 (La.App.). Such was the only proof presented in this case. The jury could not presume or speculate as to the existence of a defect in manufacture, especially when evidence was presented of a plausible cause of the leak.

It was said in *Southworth, Admx. v. Shea,* 131 Ala. 419, 30 So. 774, and quoted in *Southern Railway Co. v. Dickson,* 211 Ala. 481, 100 So. 665, as follows:

"Proof which goes no further than to show an injury could have occurred in an alleged way, does not warrant the conclusion that it did so occur, where from the same proof the injury can with equal probability be attributed to some other cause."

Under the evidence presented by plaintiff in this case there was mere proof that a pipe was loose and leaked. Why it came loose and leaked was left solely to conjecture by the jury. There was no evidence of failure of materials, workmanship or design. Liability under such proof is at best founded upon res ipsa loquiter and at worse makes the manufacturer an insurer.

I would reverse and remand.