This is an appeal by Massey-Ferguson, Inc. (Massey-Ferguson) from a judgment of the Covington County Circuit Court entered on a jury verdict rendered in favor of appellee, James W. Laird (Laird) on a suit seeking damages for breach of warranties.
Massey-Ferguson presents five issues for our review.
 1. Did the trial court err in submitting to the jury the question of breach of express warranty?
 2. Did the trial court err in submitting to the jury the question of whether Boyd was the agent of Massey-Ferguson?
 3. Did the trial court err in submitting to the jury the question of breach of implied warranty?
 4. Did the terms of the express warranty limit the damages and remedies?
 5. Did the trial court err in permitting counsel for Laird to argue damages from a blackboard during closing arguments?
We answer these questions in the negative and affirm the judgment of the trial court.
The facts are as follows.
On February 22, 1979, Laird purchased a model 760 combine, manufactured by Massey-Ferguson, from L.A. Boyd, d/b/a Samson Tractor Company (Boyd) at a cost of $62,479.00. Laird was allowed $37,479.00 for an old model combine which he traded in. The remaining balance was financed by Massey-Ferguson Credit Corporation (MFCC), which was to be paid in equal installments in March 1980 and March 1981. Laird took delivery of the combine in August 1979. Shortly thereafter, Laird began complaining about problems with the machine. Boyd and Massey-Ferguson made numerous attempts to repair the machine; however, Laird was not satisfied with the machine even after the attempted repairs. On January 5, 1981, Laird filed suit against Massey-Ferguson and Boyd for breach of express warranty and breach of implied *Page 1261 
warranty. Thereafter, MFCC filed suit against Laird, alleging that Laird had not made payments under the sales agreement covering the combine. Upon motion by Laird, the two cases were consolidated. The issues were submitted to a jury, which rendered a verdict in favor of Laird in the amount of $64,884.24 against Massey-Ferguson only. The jury also rendered a verdict in favor of MFCC against Laird in the amount of $29,779.28, which included the balance financed plus interest. The trial court entered judgments accordingly. Massey-Ferguson then appealed after its motion for judgment notwithstanding the verdict, or in the alternative, a new trial was denied.
 I.
Massey-Ferguson concedes that it gave Laird an express warranty. Nevertheless, it argues that the trial court erred in submitting the question of breach of express warranty to the jury. Massey-Ferguson presents two grounds in support of this argument: one, Laird did not rely on the express warranty; and, two, the express warranty was not a "part of the basis of the bargain" since the warranty was not delivered contemporaneously with the sale.
We find Massey-Ferguson's argument that Laird did not rely on the express warranty to be without merit. In Winston Industries,Inc. v. Stuyvesant Insurance Company, Inc., 55 Ala. App. 525,317 So.2d 493 (1975); cert. denied 294 Ala. 775, 317 So.2d 500
(1975), the Court of Civil Appeals stated:
 As this court perceives it, the determining factor in this case under the newly enacted Uniform Commercial Code is not reliance by the purchaser on the seller's warranty, but whether it is part of the "basis of the bargain." See Elanco Products Company v. Akin-Tunnell, Tex.Civ.App., 474 S.W.2d 789; Young Cooper, Inc. v. Vestring, 214 Kan. 311, 521 P.2d 281; Hawkins Construction Co. v. Matthews Co., Inc., 190 Neb. 546, 209 N.W.2d 643.
 In fact, it is not necessary to show any particular reliance by the buyer to give rise to such warranties. (Citations omitted.)
55 Ala. App. at 530 and 317 So.2d at 497.
Massey-Ferguson's argument that the express warranty was not a "part of the basis of the bargain" since it was not delivered contemporaneously with the sale of the combine is also without merit. Although Massey-Ferguson cites Tiger Motor Co. v.McMurty, 284 Ala. 283, 224 So.2d 638 (1969), as authority for its untenable proposition, Tiger Motor is distinguishable from the facts in the instant case. In Tiger Motor, the plaintiff did not know of the existence of the warranty until the automobile was delivered. Here, Laird knew about the express warranty prior to the delivery of the combine, as it was discussed in the sales agreement; furthermore, Laird was familiar with the type of warranty given on such machines. Moreover, Official Comment 7 to § 7-2-313 provides further insight into this matter; it states:
 The precise time when words of description or affirmation are made or samples are shown is not material. The sole question is whether the language or samples or models are fairly to be regarded as part of the contract. If language is used after the closing of the deal (as when the buyer when taking delivery asks and receives an additional assurance), the warranty becomes a modification, and need not be supported by consideration if it is otherwise reasonable and in order.
Express warranties are defined in Code 1975, § 7-2-313, which states in pertinent part:
 (1) Express warranties by the seller are created as follows:
 (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (Emphasis added.) *Page 1262 
Further, Official Comment 3 to § 7-2-313 provides:
 In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement Rather, any fact which is to take such affirmations, once made, out of the agreement requires clear affirmative proof. The issue normally is one of fact. (Emphasis added.)
As we understand § 7-2-313 and the Official Comments thereto, the very definition of an express warranty embraces the concept of "part of the basis of the bargain." Therefore, we opine that the trial court properly submitted the question of breach of express warranty to the jury.
 II.
Next, Massey-Ferguson contends that the trial court erred in submitting to the jury the question of whether Boyd was the agent of Massey-Ferguson. Here, it is undisputed that Massey-Ferguson's literature was about the premises of Boyd's business and that Massey-Ferguson's employees accompanied Boyd's employees when attempting to repair the combine. However, Massey-Ferguson asserts that these facts are not sufficient to establish an express agency or an agency by estoppel. To the contrary, we conclude that these facts are sufficient to provide a scintilla of evidence that Boyd was an agent of Massey-Ferguson through agency by estoppel principles, although by themselves, they are not sufficient to establish an express agency.
In NYTCO Services, Inc. v. Wilson, 351 So.2d 875 (Ala. 1977), this Court stated:
 In Johnson v. Shenandoah Life, supra [291 Ala. 389, 281 So.2d 636 (1973)], this Court quoted with approval from Automotive Acceptance Corp. v. Powell, 45 Ala. App. 596, 234 So.2d 593 (1970):
 "The doctrine of apparent authority does not rest upon what one thinks an agent's authority may be, or what the agent holds out his authority to be; rather, the doctrine of apparent authority is based on the principal's holding the agent out to a third person as having the authority under which he acts. . . ."
The court continued by observing:
 It seems to be generally held that an agent's apparent authority must be based upon the conduct of the principal and not of the agent. . . . (291 Ala. at p. 394, 281 So.2d at p. 640).
351 So.2d at 881.
Furthermore, Laird is required to rely on Boyd, the apparent agent, to constitute the estoppel. Standard Oil Company v.Gentry, 241 Ala. 62, 1 So.2d 29 (1941), cited with approval inNYTCO Services, Inc. v. Wilson, supra. The record in the instant case presents conflicting evidence as to whether Laird, in fact, relied on the representations made by Boyd. Given the conflicting evidence, we conclude that the trial court properly submitted to the jury the question of agency, since whether one is the agent of another is normally a question of fact for the jury. Hatton v. Chem-Haulers, Inc., 393 So.2d 950 (Ala. 1981).
 III.
In its third issue, Massey-Ferguson argues that the trial court erred in submitting to the jury the question of breach of implied warranty. Massey-Ferguson presents the following grounds in support of this argument; one, lack of privity between Massey-Ferguson and Laird; two, no warranty was made at the time of the sale; three, lack of reliance by Laird on the warranty; and four, negation of any implied warranty by the limiting provisions in the sales agreement and in the express warranty. We will address each of these theories separately.
Massey-Ferguson asserts that there was no privity between it and James Laird, an essential element to a claim for breach of an implied warranty where only economic loss is suffered. Code 1975, § 7-2-318. However, we have herein stated that the jury could properly find Boyd to be the *Page 1263 
agent of Massey-Ferguson. Further, in Chandler v. Hunter,340 So.2d 818 (Ala.Civ.App. 1976), the court said:
 "An agent is presumed to intend to bind his principal only and to incur no personal liability and unless an intention to substitute or superadd his personal liability for or to that of his principal is clearly shown, he will not be bound in his individual capacity." [Sealy v. McElroy,] 288 Ala. [93] at 104, 257 So.2d [340] at 350.
340 So.2d at 823.
Thus, the jury could properly have concluded that when Laird dealt with Boyd, Boyd had the capacity to contractually bind Massey-Ferguson and, therefore, that Laird was in privity of contract with Massey-Ferguson.
Massey-Ferguson further theorizes that Laird was not given a warranty at the time of the sale. It is undisputed that Laird ordered a new model 760 combine, which was the model and type equipped to harvest soybeans; however, in late 1978 or early 1979, Massey-Ferguson developed that model and equipped it to harvest rice. The evidence is in conflict as to whether Laird had reason to know of Massey-Ferguson's development and as to whether Boyd knew that Laird needed a combine equipped to harvest soybeans. Given the conflicting evidence, this theory does not provide a valid reason to prevent the issue of breach of implied warranty from being submitted to the jury. SeeCaldwell v. Brown Funeral Home, 345 So.2d 1341 (Ala. 1977).
We have sufficiently addressed Massey-Ferguson's third theory, lack of reliance by Laird on the warranty, in the above portion of this opinion pertaining to express warranty.
Massey-Ferguson's final theory to support its argument that the trial court erred in submitting the question of breach of implied warranty, is that the provisions in the sales agreement and the express warranty negated any implied warranty. Although disclaimer of warranties and limitation of remedies are conceptually different, they are, in substance, the same.Burbic Contracting Co., Inc. v. Cement Asbestos Products Co.,409 So.2d 1 (Ala. 1982); White and Summers, Handbook of the LawUnder the Uniform Commercial Code, § 12-8, p. 375 (1972). Therefore, we reserve discussion of this point until we address the question pertaining to limitation of remedies.
 IV.
We now turn to the issue of whether Laird's damages were limited by the terms of the manufacturer's express warranty. Massey-Ferguson argues that they were. We disagree. As permitted by Code 1975, §§ 7-2-316 (4) and 7-2-719 (1), Massey-Ferguson attempted to contractually limit its buyer's remedies for breach of warranty in its "New Agricultural Equipment Warranty," which states:
 EXCLUSIVE EFFECT OF WARRANTY AND LIMITATION OF LIABILITY
 THIS WARRANTY IS IN LIEU OF ALL WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PURPOSE OR OTHER REPRESENTATIONS, WARRANTIES OR CONDITIONS, EXPRESS OR IMPLIED.
 The remedies of the Owner set forth herein are exclusive. The Company neither assumes nor authorizes any person to assume for it any other obligation or liability in connection with the sale of covered machines.
 Correction of defects in the manner and for the applicable period of time provided above shall constitute fulfillment of all responsibilities of the Company to the Owner and the Company shall not be liable for negligence, under contract or any other manner with respect to such machines. IN NO EVENT SHALL THE OWNER BE ENTITLED TO RECOVER FOR INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES SUCH AS BUT NOT LIMITED TO, LOSS OF CROPS, LOSS OF PROFITS OR REVENUE, OTHER COMMERCIAL LOSSES, INCONVENIENCE OR COST OF RENTAL OR REPLACEMENT EQUIPMENT. *Page 1264 
Here, Massey-Ferguson and Boyd attempted to repair the combine numerous times at their expense. However, the combine was never repaired to Laird's reasonable satisfaction. In effect, Massey-Ferguson argues that it had the right to remedy defects in the combine for an unlimited period of time. To the contrary, the seller does not have an unlimited period of time to repair and/or replace parts under a warranty. Tiger MotorCompany v. McMurty, supra and Riley v. Ford Motor Co.,442 F.2d 670 (5th Cir. 1971). Given the numerous attempts at repair over the extended time period, the jury could properly conclude (as it presumably did, since it obviously awarded consequential damages) that the combine was not repaired within a reasonable time and that the limited warranty had failed of its essential purpose. (See Volkswagen of America, Inc. v. Harrell,431 So.2d 156 (Ala. 1983), and Winchester v. McColloch Brothers Garage,388 So.2d 927 (Ala. 1981)). This determination invokes Code 1975, § 7-2-719 (2), which states: "Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this title." The general rule for damages for breach of warranty is stated in Code 1975, §§ 7-2-714 (2), and 7-2-714 (3):
 (2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount, and nothing in this section shall be construed so as to limit the seller's liability for damages for injury to the person in the case of consumer goods. Damages in an action for injury to the person include those damages ordinarily allowable in such actions at law.
 (3) In a proper case any incidental and consequential damages under section 7-2-715 may also be recovered.
Therefore, Laird's damages are the difference between the value of the goods as warranted and the value as delivered, plus incidental and consequential damages. Winchester v. McCollochBrothers Garage, supra.
Massey-Ferguson calls our attention to S.M. Wilson Co. v.Smith International, Inc., 587 F.2d 1363 (9th Cir. 1978) which stands for the proposition that the inability to repair the machine does not eliminate the disclaimer of implied warranties barring the recovery of consequential damages. We recognize that the holding in S.M. Wilson is contrary to the holding in this case. However, we are bound by the law as set forth inWinchester v. McColloch Brothers Garage, supra.
 V.
Finally, we turn to the propriety of the trial court's action in permitting Laird's counsel to argue damages from a blackboard during closing arguments. Massey-Ferguson argues that this constituted reversible error, since it objected to the procedure and had no opportunity to reply thereto. We disagree. The only restriction which the courts of this state have applied to final summation or closing argument is that it be confined to the issues and the evidence presented at trial.Freeman v. Hall, 286 Ala. 161, 238 So.2d 330 (1970); CentralBank v. Boyles, 355 So.2d 98 (Ala.Civ.App. 1978). In the instant case, Laird presented evidence as to the damages he sustained from loss of crops due to Massey-Ferguson's breach of warranty. Therefore, the arguments made by Laird's counsel while using the blackboard were well within the perimeter of the issues and the evidence presented. Moreover, this court has consistently held that the use of a blackboard for the purpose of illustrating testimony is within the sound discretion of the trial court. Payne v. Jones, 284 Ala. 196, 224 So.2d 230 (1969);Atlantic Coast Line Railroad Company v. Kines, 276 Ala. 253,160 So.2d 869 (1963); and Southern Cement Co. v. Patterson, 271 Ala. 128, 122 So.2d 386 (1960). In brief, Massey-Ferguson recognizes this sound principle of law, but argues that in the instant case, the use of the blackboard was prejudicial since the monetary figures used therefrom to represent *Page 1265 
loss of crops was the exact total of the jury's award, to-wit, $64,884.24. We have herein concluded that the jury could properly award consequential damages, here, damages for the loss of crops. Since the jury could properly have arrived at the amount of its award from evidence adduced at trial, we conclude that the trial court did not abuse its discretion in allowing Laird's counsel to use the blackboard, and that the use thereof did not constitute prejudicial error to Massey-Ferguson.
For the reasons stated herein, the judgment of the trial court is affirmed.
AFFIRMED.
TORBERT, C.J., and FAULKNER, ALMON and EMBRY, JJ., concur.