Roy Lee ROWELL, Plaintiff-Appellee,

v.

TREADWELL FORD, INC., Defendant,

Ford Motor Company et al.,
Defendants-Appellants.

No. 74–3555
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

April 11, 1975.

Michael D. Knight, Mobile, Ala., for defendants-appellants.

Geary A. Gaston, Mobile, Ala., for plaintiff-appellee.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

DYER, Circuit Judge:

Rowell sued Treadwell Ford, Inc. and Ford Motor Company for breach of an express warranty covering a 1972 truck sold to him. Judgment against Ford of $13,137.79 was entered on the jury verdict in favor of Rowell and Ford appeals.

The facts are simple. On August 17, 1972, Rowell purchased the truck in Mobile, Alabama from Treadwell for $24,339.00. The truck was warranted in writing.[1] While in Orlando, Florida on October 28, 1972, the steering wheel on the truck locked because of a defect in factory material or workmanship, causing an accident. Rowell took the truck to an authorized Ford dealer in Orlando to have it repaired under the warranty which was admittedly in effect. Ford ultimately refused to repair the truck under warranty. Finally, the repairs were made at Rowell's expense about March 1, 1973. The reasonableness of the time to effect the repairs is not questioned. Based upon a breach of the express warranty Rowell sued for the loss of use of the truck for approximately four months together with the cost of repairs.

Before trial Rowell and Treadwell settled and the case was dismissed with prejudice as to Treadwell. Ford then moved for a dismissal, claiming that as the liability, if any, of Treadwell and Ford on the express warranty was joint, the adjudication on the merits of Treadwell's responsibility was as well an adjudication of the liability of Ford. The motion to dismiss was denied.

On this appeal Ford assigns as error the court's failure to dismiss it since the claim under the express warranty was a joint and not a several obligation on the part of Ford and Treadwell. Further, Ford argues that the district court erred in excluding evidence upon which to base the market value of the truck's use or hire during the time required to make repairs.

■ Because the warranty states that "Ford and the Selling Dealer jointly warrant . . . that the Selling Dealer will repair or replace" etc., Ford argues that the recovery must be against both or neither. Thus Ford argues the dismissal of Treadwell requires the dismissal of Ford. We disagree. It was stipulated that Treadwell had no obligation to repair the truck in Orlando or to transport the truck back to Mobile for repairs. The warranty provides that "if the owner is traveling or has moved a long distance from the Selling Dealer or needs emergency repairs, any authorized Ford dealer will perform the repairs."

---

1. The warranty provided:

*Ford and the Selling Dealer* jointly warrant with respect to each 1972 model medium and heavier truck built by Ford that the Selling Dealer will repair or replace any of the following parts that are found to be defective in factory material or workmanship on the following basis:

Any part during the first twelve months or 12,000 miles of operation whichever occurs first (except tires and diesel engines manufactured by other than Ford, which are separately warranted by their manufacturers); without charge for parts and labor.

Any part of the engine block, head and all internal engine parts, water pump, intake and exhaust manifolds, flywheel and flywheel housing, clutch housing (excludes manual clutch assembly and clutch release bearing), transmission case and all internal transmission parts (includes auxiliary transmission), transfer case and all internal parts, drive shaft and drive shaft support bearings, universal joints, drive axle housing and all internal parts (excludes drive wheel bearings) and drive axle shafts, after 12,000 miles and during the first 12 months or 50,000 miles of operation, whichever occurs first; for a charge of 50% of the dealer's regular warranty charge to Ford for parts and labor. The above warranty periods will begin on the date of the original retail delivery or the date of original use by Ford or any of its dealers, whichever is earlier.

Under the warranty, repairs or replacements will be performed by the Selling Dealer, using Ford's service parts or Ford Authorized Remanufactured Parts following delivery of the vehicle to his place of business in the United States or Canada. If the owner is traveling or has moved a long distance from the Selling Dealer or needs emergency repairs, any authorized Ford dealer will perform the repairs.

This provision cannot be read to mean that a local authorized Ford dealer warrants that any other authorized Ford dealer will make repairs under the warranty. We are unwilling to hold that a Ford dealer in Mobile is liable in damages resulting from the failure of a dealer in Orlando to make warranty repairs, and thus permit Ford to escape the essential purpose of its warranty. It is clear that the Orlando dealer did not repair because Ford refused to recognize responsibility under the warranty.

■ With respect to the damage issues we think the court erred in excluding evidence of the expenses ordinarily incurred in connection with the rental of the truck. Rowell's claim is that as a result of the accident he was caused to lose the truck in his business for a period of time. The appropriate measure of damages for such a loss has been explicated by the Supreme Court of Alabama.

> The rule in Alabama for the measure of damages for the injury to a commercial vehicle is the damages which would remunerate the plaintiff for necessary repairs in substantially restoring the vehicle to its former condition and the market value of its use or hire during the time required to make such repairs and fit it for business.

Wilson & Co. v. Sims, 1948, 250 Ala. 414, 34 So.2d 689, 690.

■ Rowell attempted to prove the reasonable value of the use or hire of the truck during the time required to make repairs by evidence of rentals to a third party at the rate of $22.50 per hour, $2.50 of which was the cost of a driver. Rowell's loss however, is not the full rental he could have been paid, but the net amount after reducing the rental charge by necessary expenses obviously incurred such as gas, oil, lubrication, maintenance requirements, depreciation and upkeep. The net amount would restore Rowell his portion as if the warranty had not been breached, while the difference between the gross amount and the net amount would be a windfall to him, since he would be recovering that which would otherwise have been expended by him in the operation of the truck. While there is no Alabama precedent directly in point we have no doubt that Alabama would follow the general rule covering the applicability of net versus gross rental. *See* 8 Am.Jur.2d, Automobiles and Highway Traffic, § 1047; 25 C.J.S. Damages § 83, p. 905.

The court therefore erred in refusing to permit the cross examination of Rowell by Ford to elicit the expenses Rowell would have been required to pay in the operation of the truck, thereby reducing the gross rental to the net rental value to arrive at the proper measure of damages.

Since we affirm as to liability and reverse as to damages, we see no reason to retry both issues. The case is remanded for trial of the damage issue only.

Affirmed in part; reversed in part and remanded with directions.