Patsy L. Spann brought suit against Old Southern Life Insurance Company to recover damages for breach of contract, fraud, and bad faith refusal to pay a claim.
The case was submitted to a jury, which returned a verdict in favor of Mrs. Spann and awarded her damages of $175,000, of which $156,743.80 were punitive and $18,256.20 were for doctor and hospital bills. The trial court denied Old Southern's motions for directed verdict, new trial, and judgment notwithstanding the verdict.
In February of 1982 two agents of Old Southern contacted Mrs. Spann. After some discussion, Mrs. Spann decided to purchase a basic and a major medical policy. One of the agents read the application to Mrs. Spann and recorded her answers. The portion of the application concerning *Page 988 
the applicant's prior medical history asks whether the applicant has had any of thirty-seven physical diseases or illnesses. The section ends by asking "Has any person above consulted or been treated by any physician or practitioners in the last five years?"
Mrs. Spann testified that she gave the agent the following information:
 "I told him that Dr. Sanders had all of my medical records for several years back and that I had had a lot of surgery. I had had an intestinal bypass, and I did know they took my gall bladder out and re-done that in Birmingham. And I had hemorrhoid surgery, and that had to be re-done in Birmingham. And that Dr. Chambliss had done my bypass here in Montgomery. And he had done the hemorrhoid and bypass here in Montgomery, but it was so extensive that I just could not really go into detail with him to explain in medical terms of what they called everything they did. If he would check with Dr. Henry Laws in Birmingham, they could give him my complete medical history."
Mrs. Spann further testified that the agent assured her that under the circumstances of this case Old Southern would contact the doctors.
Both of the soliciting agents for Old Southern testified that Mrs. Spann did not mention any disease or operation other than the hemorrhoid and gall bladder operations. They also denied that they assured Mrs. Spann that Old Southern would contact her doctors. One of these agents did not have a license to sell insurance and the other had had his license revoked (but later restored) for failing to disclose on his application that he had been convicted of two felonies.
The application shows that Mrs. Spann answered "yes" to the questions asking if she had had any disease of the digestive system, and if she had seen a physician within the last five years. In the box on the application asking for an explanation of any question answered affirmatively, the agent wrote "gall bladder" and "hemorrhoids." The application also lists both of Mrs. Spann's physicians and their addresses.
After the application was taken, Mrs. Spann paid the first year's premium. Old Southern accepted this premium and issued a policy shortly thereafter. At no time did Old Southern contact the physicians noted on the application, although the physicians had a detailed history of Mrs. Spann's medical problems, including her psychiatric treatment.
Mrs. Spann was hospitalized five times in the year after her policy was issued. In April she had a mass in her right breast excised; in July she was treated for blockage in her intestines; in October she had surgery to remove scar tissues; in November she had gastric disturbances; and in January she had stomach problems. Hospital and doctor bills for these matters totaled $18,256.20.
Frank Aspinwall, claims manager for Old Southern, and Roy T. Epperson, Sr., president of Old Southern, both reviewed the claim filed by Mrs. Spann after her April surgery. Both men agreed that the policy should be voided and rescinded because of material discrepancies between the information contained in her application and that contained in the records received from the admitting hospital. The hospital records showed that Mrs. Spann had an intestinal bypass in 1978 and has had psychiatric treatment. Mrs. Spann had been admitted to the psychiatric units of Mead Haven in 1978 and Jackson Hospital in 1981. Her condition was diagnosed as depressive reaction in 1981. She contends that the application is ambiguous and should not be construed as asking for this information. Nevertheless, on August 6, 1982, Old Southern sent a letter to Mrs. Spann voiding her policy and refunding the premiums paid.
Old Southern argues that the trial court committed reversible error in denying its motion for directed verdict on the bad faith claim. *Page 989 
In National Security Fire Cas. Co. v. Bowen, 417 So.2d 179
(Ala. 1982), we said:
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for the refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Cas. Co., Ala. 405 So.2d 1 (1981). No lawful basis `means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, Ala. 405 So.2d 916 (1981). When a claim is `fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.
 "Under those authorities the plaintiff in a `bad faith refusal' case has the burden of proving:
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The `debatable reason' under (c) above means an arguable reason, one that is open to dispute or question."
417 So.2d at 183.
In National Savings Life Insurance Co. v. Dutton,419 So.2d 1357 (Ala. 1982), a plurality of this Court quoted the above language from Bowen and added:
 "In Bowen, supra, we set out the elements of the tort and attempted to show the plaintiff's burden in these cases. It is a heavy burden. In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
Id., at 1362.
It is clear that this is not a case in which a directed verdict should be granted for the plaintiff on the contract claim. Old Southern asserts that it may deny the claim under the authority of Code 1975, § 27-14-7, because of Mrs. Spann's omissions or concealment of material facts. In an action for breach of contract there would be at least one issue of law — whether the application was ambiguous in relation to psychiatric treatment — and several issues of fact — e.g., whether Mrs. Spann mentioned her intestinal bypass surgery and whether the agents assured her they would ascertain her complete medical history from her doctors. If a jury found in her favor on these issues, she might recover in contract or in fraud, but Old Southern is not guilty of bad faith refusal to pay for raising these defenses.
It is undisputed that Mrs. Spann did not mention her psychiatric treatment. An insurer has a right to expect applicants for insurance policies to tell the truth. Old Southern has at least an arguable position that the application requested information that would include her psychiatric treatment. Mrs. Spann certainly knew of this treatment and she did not reveal it. An insurance company does not normally have a duty to inquire further to verify that an applicant has told it the truth. While Old Southern may have undertaken a duty in *Page 990 
this case to make inquiries of her doctor, the failure to do so does not support a bad faith action in these circumstances. The psychiatric treatment is so different in kind from the surgeries, as to which the agents allegedly agreed to ascertain the specific nature, that Old Southern is entitled to raise her failure to mention it as a defense. This factor distinguishes the instant case from Aspinwall v. Gowens, 405 So.2d 134 (Ala. 1981).
Because Mrs. Spann did not prove the lack of an arguable reason to deny her claim, the trial court erred in denying Old Southern's motion for directed verdict on the bad faith claim. Where a trial court denies a defendant's motion for directed verdict on a count which is not supported by the evidence, a reviewing court may not presume that the jury returned its general verdict on a count which is supported by the evidence.John Deere Indus. Equipment Co. v. Keller, 431 So.2d 1155 (Ala. 1983). We cannot presume that the jury returned its general verdict on Mrs. Spann's contract or fraud causes of action.
We therefore reverse the judgment and remand the cause for a new trial on the contract and fraud claims.
REVERSED AND REMANDED.
All the Justices concur.