Pauline Lyles sued American General Life and Accident Insurance Company ("American General") to recover damages for breach of contract, fraud, and bad faith refusal to pay insurance proceeds pursuant to a policy on the life of her husband, Porter Lyles.
The case was submitted to a jury, which returned a general verdict in favor of Mrs. Lyles and awarded her damages of $758,270.25, plus interest. The trial court denied American General's motions for directed verdict, judgment notwithstanding the verdict, and new trial. The trial court granted remittitur, reducing the jury's verdict to $383,270.25. Both parties appeal.
In June 1983, John Hyden, then a sales agent for American General,[1] visited Mr. Lyles in his home. Mr. Lyles decided to purchase a $10,000 joint whole life insurance policy. Hyden read the questions on the application to Mr. Lyles and recorded his answers. The portion of the application concerning the applicant's prior medical history asks whether "any Proposed Insured within the past five years [has] consulted with or been treated by a doctor, or been confined to any hospital?" Mr. Lyles responded in the affirmative, but disclosed in the space provided for explanation only that in November 1982 at St. Margaret's Hospital he had undergone surgery to repair a hernia.
Later in June 1983, Peggy Sue Ezell, a licensed practical nurse employed by Insurex, visited the Lyleses in their home and completed the medical examiner's portion of the application for the American General policy. Ms. Ezell also asked Mr. Lyles a series of health history questions and recorded his answers.
On June 28, 1983, the application for the policy, together with the medical examination portion of that application, was submitted to American General. After underwriting review, policy number 83631836 was issued to Mr. Lyles. At no time did American General contact the physician named by Mr. Lyles on the application.
Monthly premiums were paid from July 1983 through January 1984, and then discontinued. The policy lapsed at the end of the 31-day grace period following non-payment of the monthly premium due February 11, 1984.
The following April or May, Mrs. Lyles discussed reinstating the policy with Wendell Saffles, who had been district manager for American General during 1983. E.S. Coker, staff manager for American General, asked Mr. Lyles the questions on the application for reinstatement and recorded his answers. Mr. Lyles indicated that his only hospitalization since the lapse of the policy was a visit to the V.A. Hospital, where he was treated for bruises suffered when he was hit by a car. The application was completed on May 21, 1984.
The application for reinstatement was processed by American General's underwriting department and approved. Both *Page 698 
the June 28, 1983, application and the May 21 reinstatement application were attached to and incorporated in the reinstated policy. Mr. Lyles assigned ownership of the policy to Mrs. Lyles on December 8, 1984. Mrs. Lyles paid monthly premiums from June 1984 through March 1985. Mr. Lyles died on April 5, 1985.
On May 17, 1985, Mrs. Lyles signed a "proof of death" claimant's statement with respect to the American General policy. On May 30, 1985, American General requested an Equifax claim investigation. The Equifax report included the following medical records: 1) records from the V.A. Hospital in Montgomery relating to a period of hospitalization in April 1984 resulting from an automobile accident; 2) records from St. Margaret's Hospital relating to the hernia operation and hospitalization in November 1982; and 3) records of St. Margaret's Hospital relating to hospitalization in May 1981 and indicating that Mr. Lyles was diagnosed as suffering from chronic obstructive pulmonary disease, emphysema, and hypertension and that he had tested positive for tuberculosis and histoplasmosis.
On June 26, 1985, Ms. Vicky Land, of the American General claims office, delivered the claim file to the underwriting department of American General, requesting that the file and medical information be reviewed and a determination made concerning whether the newly acquired medical information would have influenced the company's decision to issue the policy.
On June 28, 1985, the underwriting department determined that, if it had been known when Mr. Lyles's application was received, his history of chronic obstructive pulmonary disease ("COPD") with emphysema, treatment for hypertension and positive histoplasmosis test would have resulted in American General's refusal to issue the policy.
On July 1, 1985, Ms. Land contacted Tom Reynolds, district manager of the American General office in Montgomery, requesting statements from the agents who dealt with Mr. Lyles, to determine if the questions on the applications for the policy were asked of Mr. Lyles, and if he gave the indicated answers. On July 17, 1985, a written statement was received from John Hyden confirming that he had asked the questions of Mr. Lyles and that he had received and recorded Mr. Lyles's answers as they appeared on the June 28 application attached to the policy. The confirmation from E.S. Coker, who took the application for reinstatement, was not prepared until January 6, 1986.
By letter dated July 19, 1985, Ms. Land advised Mrs. Lyles that the investigation regarding the claim based on Mr. Lyles's death had been completed and that the previously undisclosed hospitalization of Mr. Lyles at St. Margaret's Hospital in May 1981 had been discovered. Based on that information, the claim was denied, the policy rescinded, and all premiums refunded with interest.
American General argues that the trial court committed reversible error in denying its motion for directed verdict on the bad faith claim. Mrs. Lyles argues that Mr. Lyles's omissions were innocent; that American General agents knew that Mr. Lyles smoked heavily; and that if American General had complied with its duty to investigate the information given on the application, the omitted information would have been revealed.
In National Security Fire Cas. Co. v. Bowen, 417 So.2d 179
(Ala. 1982), we said:
 "An insurer is liable for its refusal to pay a direct claim when there is no lawful basis for refusal coupled with actual knowledge of that fact. Chavers v. National Security Fire Cas. Co., 405 So.2d 1 (Ala. 1981). No lawful basis 'means that the insurer lacks a legitimate or arguable reason for failing to pay the claim.' Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala. 1981). When a claim is 'fairly debatable,' the insurer is entitled to debate it, whether the debate concerns a matter of fact or law. Ibid.
 "Under those authorities the plaintiff in a 'bad faith refusal' case has the burden of proving: *Page 699 
 "(a) an insurance contract between the parties and a breach thereof by the defendant;
 "(b) an intentional refusal to pay the insured's claim;
 "(c) the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
 "(d) the insurer's actual knowledge of the absence of any legitimate or arguable reason;
 "(e) if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
 "In short, plaintiff must go beyond a mere showing of nonpayment and prove a bad faith
nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.
 "The 'debatable reason' under (c) above means an arguable reason, one that is open to dispute or question."
417 So.2d at 183.
In Old Southern Life Insurance Co. v. Spann, 472 So.2d 987
(Ala. 1985), we again quoted the above language and added the following language from National Savings Life Insurance Co. v.Dutton, 419 So.2d 1357 (Ala. 1982):
 "In Bowen, supra, [417 So.2d 179] we set out the elements of the tort and attempted to show the plaintiff's burden in these cases. It is a heavy burden. In the normal case in order for a plaintiff to make out a prima facie case of bad faith refusal to pay an insurance claim, the proof offered must show that the plaintiff is entitled to a directed verdict on the contract claim as a matter of law. Ordinarily, if the evidence produced by either side creates a fact issue with regard to the validity of the claim and, thus, the legitimacy of the denial thereof, the tort claim must fail and should not be submitted to the jury."
419 So.2d at 1362.
It is clear that this is not a case in which a directed verdict should be granted for the plaintiff on the contract claim. Old Southern Life, supra. American General asserts that it may deny the claim under the authority of Code 1975, §27-14-7, because of Mr. Lyles's omissions or concealment of material facts. In a breach of contract action there would be several issues of fact, e.g., whether Mr. Lyles's omission of information asked for on the application was fraudulent; whether the omitted information was material to the risk; and whether American General was presented with information that would have prompted a reasonably prudent insurer to investigate the application further. While Mrs. Lyles might recover in contract or fraud, American General is not guilty of bad faith refusal to pay for raising these issues.
It is undisputed that the application for insurance omitted information concerning a prior period of hospitalization. Whether Mr. Lyles told the agent the truth and the agent omitted the information is in dispute, but an insurer has a right to expect applicants for insurance policies to tell the truth. Old Southern Life, supra. The application specifically asked for information concerning any hospitalization within the past five years. There is evidence from which a jury could conclude that Mr. Lyles knew of the May 1981 hospitalization and failed to disclose it.
While the information available to American General may have imposed upon it the duty to investigate the application further, its failure to do so does not preclude it from raising as a defense Mr. Lyles's failure to mention the 1981 hospitalization. Thus it was error to submit the bad faith claim to the jury.
The trial court was correct, however, in denying defendant's motion for directed verdict on the fraud and contract claims. Evidence indicated that when the policy was reinstated Mrs. Lyles was not informed: 1) that the reinstated policy had *Page 700 
a higher premium than the original policy; 2) that the reinstatement procedure resulted in lost cash value; and 3) that the contestability period of the policy began anew at the time of reinstatement. This is sufficient to present a jury issue on the fraud claim. Mrs. Lyles also presented evidence tending to prove the existence of a scheme or practice with respect to American General's underwriting procedures from which the jury could find that American General intended not to perform its obligations under the contract at the time the policy was sold.
We conclude that the trial court was correct in allowing the jury to consider the evidence as it related to the claims of breach of contract and fraud. However, because Mrs. Lyles did not prove the lack of an arguable reason to deny her claim, the trial court erred in denying American General's motion for directed verdict on the bad faith claim. Where a trial court denies a defendant's motion for directed verdict on a count that is not supported by the evidence, a reviewing court may not presume that the jury returned its general verdict on a count that is supported by the evidence. Old Southern LifeInsurance Co. v. Spann, 472 So.2d 987 (Ala. 1985); John DeereIndus. Equipment Co. v. Keller, 431 So.2d 1155 (Ala. 1983). It is not clear from the record that the general verdict was based on Mrs. Lyles's contract or fraud causes of action. It is possible that it was based upon the bad faith claim that was erroneously submitted to the jury.
Accordingly, we reverse the judgment and remand the cause for a new trial on the contract and fraud claims. Our resolution of the bad faith issue obviates any need to discuss the trial court's grant of remittitur.
REVERSED AND REMANDED.
TORBERT, C.J., and JONES, ADAMS and STEAGALL, JJ., concur.
[1] Prior to a 1983 name change, the company now known as American General was known as National Life. In the interest of clarity, all references will be to American General.