Cummins Engine Company, Inc., appeals from a judgment based on a jury verdict for Invictus Motor Freight, Inc., and General Motors Acceptance Corporation in the amount of $318,000.
The pertinent facts are as follows: Invictus Motor Freight, Inc., a one-truck freight company, was formed by Doug Lowry and his father and stepmother, Robert and Jean Lowry. On April 19, 1988, Invictus purchased from Great Basin Trucks, Inc., in Salt Lake City, Utah, a Volvo-White GMC truck equipped with an NTC-444 Cummins diesel engine, which, according to Doug, the truck dealer said came with a Cummins 5-year/500,000-mile express warranty. The buyer's order contained a handwritten note reading: "Cummins 5 year/500,000 mile warranty document from Cummins." In August 1988, he received a letter from Cummins Alabama, Inc. (a distributor and authorized dealer for Cummins engines), stating in part:
 "New trucks purchased with NTC-444 engines and delivered by June 30, 1989, will carry (at no charge) 'Custom Registry Plus.' Custom Registry Plus is our 5 year/500,000 mile major components coverage which covers the cost of parts and labor for its duration."
Furthermore, in the summer of 1988, Doug received a packet of information containing information about various warranty plans offered by Cummins, including the "Custom Registry Plus" plan.
After it had been driven approximately 100,000 miles between May 1988 and April 1989, the truck began using what Doug considered to be excessive amounts of oil. Consequently, White-GMC Trucks of Birmingham ("White-GMC") (operator of a truck sales and repair facility where the truck had been repaired) "rebuilt" the engine; Cummins paid the cost of the "rebuild," except for replaced bearings, under a 2-year/100,000-mile warranty. The rebuild was complete by May 6, 1989.
On June 28, 1989, as Doug was leaving Albany, Georgia, the engine quit and the truck had to be towed to a Volvo-White dealer. The shop foreman who inspected the truck notified Doug that the injectors and the valves in the engine needed repair but that he was not going to go on with the inspection to determine the engine trouble because, he said, the cylinder liners had been honed, contrary to Cummins's standard repair practice, and this honing "kicked" the engine out of warranty. (The evidence indicated that Invictus had had the Cummins engine repaired only by authorized service dealers.) Having determined that the cylinder liners had been honed, the shop foreman told Lowry that he would have to pay $1,500 cash before any repairs could be made on the engine. White-GMC Trucks of Birmingham denied that it had honed the cylinder liners during the engine rebuild the previous month. Thereafter, Doug had the truck towed to Roanoke, Alabama, where it has been stored.
Invictus Motor Freight sued Cummins Engine Company, Inc. (the manufacturer of the truck's diesel engine), Volvo GM Heavy Truck Corporation (the truck manufacturer), Great Basin Trucks, Inc. (the truck dealer), Eaton Corporation (the manufacturer of the truck's transmission), and White-GMC, alleging breach of warranty, negligence (negligent manufacture or assembly), and fraud (mistaken or reckless misrepresentation).
Invictus also sued General Motors Acceptance Corporation (the company that had financed the purchase of the truck), but GMAC was realigned as a plaintiff. (For purposes of this opinion, we will refer simply to Invictus as the plaintiff.) The claims against Great Basin Trucks, Inc., were dismissed for lack of personal jurisdiction; a summary judgment was entered for Eaton Corporation; and Volvo GM Heavy Truck Corporation and White-GMC were voluntarily dismissed. Cummins was the only remaining defendant. *Page 763 
At the close of the plaintiff's case and at the close of all the evidence, Cummins moved for a directed verdict on all of the plaintiff's claims. The trial court denied the motions and submitted the case to the jury under the claims of breach of warranty, negligent manufacture or assembly of the truck, and mistaken or reckless misrepresentation. The jury returned a general verdict for the plaintiff in the amount of $318,000, awarding compensatory damages only. The court overruled Cummins's motion for judgment notwithstanding the verdict, or, in the alternative, for a new trial. Cummins appeals.
Cummins argues that the plaintiff offered no evidence — and certainly no substantial evidence — that Cummins committed some negligent act or omission in manufacturing or assembling the engine. Therefore, it argues, the trial court erred in denying its motion for a directed verdict.
In Aspinwall v. Gowens, 405 So.2d 134, 138 (Ala. 1981), the Court held:
 "[I]f a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count."
See Charter Hospital of Mobile v. Weinberg, 558 So.2d 909 (Ala. 1990); American General Life Accident Insurance Co. v. Lyles,540 So.2d 696 (Ala. 1988).
 " 'Where a trial court denies a defendant's motion for directed verdict on a count that is not supported by the evidence, a reviewing court may not presume that the jury returned its general verdict on a count that is supported by the evidence.'
 "[American General Life Accident Insurance Co. v. Lyles], 540 So.2d [696, 700 (Ala. 1988)]. The inference is that, if the trial court is presented with the argument that the reviewing court eventually reverses on, then the presumption of Aspinwall will not apply and the case will be remanded for trial on the valid count."
Georgia Casualty Surety Co. v. White, 582 So.2d 487, 496
(Ala. 1991). This is the situation presented by the facts in this case.
Specifically, in this case, Cummins moved for a directed verdict on Count IV of the complaint, which alleged negligent assembly of the truck and sought money damages and rescission of the purchase of the truck. After the jury returned its general verdict for $318,000, Cummins again presented to the trial court its argument that the count was not supported by the evidence, by a motion for a judgment notwithstanding the verdict or for a new trial.
No evidence at trial indicated that Cummins assembled the truck; and, although it is undisputed that Cummins manufactured the engine, no evidence indicated the manner or method used by Cummins to assemble the engine, and no evidence indicated proper or improper methods of engine assembly. Furthermore, no expert or other testimony indicated that Cummins did not properly manufacture or design the engine. In fact, the only testimony at trial concerning the manufacture or design of the Cummins engine was given by the plaintiff's expert witness, who testified that he had no complaints about the way the Cummins engine was designed, and that he "definitely" thought that Cummins made "a good engine."
Because the trial court was presented with the opportunity to rule on the negligent assembly claim and failed to hold — as it should have held — that there was insufficient evidence to submit the negligent assembly claim to the jury, we cannot "presume" that the jury verdict was based on a count that was supported by the evidence. It is clear that the court submitted an invalid count to the jury, after the defendant had informed the trial court of the invalidity of that count.
Cummins also maintains that the fraud claims stated in the plaintiff's amended complaints were barred by the two-year statute of limitations governing fraud actions. Ala. Code 1975, § 6-2-38(l). *Page 764 
According to the plaintiff, however, the fraud claims added by amendment are saved from the operation of the statute of limitations because, it argues, under Rule 15(c), A.R.Civ.P., those claims relate back to the date the original complaint was filed. Rule 15(c) states in part:
 "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading. . . ."
Thus, for an amendment to relate back to the date of the original pleading, the claim stated in the amendment must have arisen from the same conduct, transaction, or occurrence set forth in the original pleading. See Georgia Casualty SuretyCo. v. White, 582 So.2d 487 (Ala. 1991). Where the amendment adds a new theory of liability and that new theory is based upon the same facts as the original theory and those facts have been brought to the attention of the opposite party by a previous pleading, no prejudice is worked by allowing the amendment. See Money v. Willings Detroit Diesel, Inc.,551 So.2d 926 (Ala. 1989); McClendon v. City of Boaz, 395 So.2d 21
(Ala. 1981). However, an amendment stating a theory based on conduct arising from a separate transaction or occurrence will not relate back. See 1 C. Lyons, Alabama Rules of CivilProcedure Annotated 256 (2d ed. 1986); Roney v. Ray,436 So.2d 875 (Ala. 1983). The relation-back doctrine of Rule 15(c) is objective, and its application, under prescribed circumstances, is nondiscretionary. Whitfield v. Murphy, 475 So.2d 480
(Ala. 1985).
The original complaint was filed on July 18, 1989, and three of the four counts alleged in essence that the truck and its component parts were defective — in Count I, the plaintiff sought "to revoke" acceptance of the truck, alleging that from its purchase on April 19, 1988, through July 18, 1989, the truck had been in for repairs for a total of approximately 72 days; in Count III, the plaintiff sought to rescind the purchase of the truck, alleging that although the defendants had warranted that the truck would be of merchantable quality and fit for the purposes for which it was intended, the truck and its component parts were defective; and in Count IV, the plaintiff sought rescission of the purchase of the truck, alleging that the truck had been negligently assembled. In Count II, the plaintiff sought to rescind the purchase of the truck, alleging that on June 28, 1989, when the truck stopped running and was towed to an authorized dealer, it was notified that, because certain nonstandard work had been performed on the engine by authorized service dealers, the plaintiff would have to pay for the repairs.
On November 16, 1990, the plaintiff filed the first amended complaint, alleging that in May 1988, when it attempted to have the truck repaired under the warranty given by Cummins, Cummins fraudulently represented that there was no warranty on the engine.
Clearly, the fraud count alleged in the first amended complaint does not arise out of the same conduct, transaction, or occurrence set forth in the original complaint, in which the plaintiff sought to revoke acceptance and to rescind the purchase of the truck, because of defects in the truck and its component parts and because of the nonstandard repairs that had been performed by authorized service dealers. The fraud count alleged in the first amended complaint involves different facts, different wrongs that occurred at different points in time, and a different cause of action. Therefore, the doctrine of relation back does not save the fraud claim stated in the first amended complaint from the bar of the statute of limitations.
On May 16, 1991, the plaintiff filed the second amended complaint, alleging that at the time it purchased the truck in April 1988 and at times thereafter, Cummins represented that the truck carried a 5-year/500,000-mile warranty and alleging that on June 28, 1989, when the truck stopped running, Cummins denied that there was a 5-year/500,000-mile warranty; this denial, the plaintiff says, was a false representation. The claim stated in the second amended complaint arose out of "the conduct, transaction or occurrence set forth" in Count II of the original complaint; therefore, it related back to the date of the filing of the original complaint, under Rule 15(c). *Page 765 
Cummins does not dispute that there was a 5-year/500,000-mile extended warranty on the truck. However, it maintains that because the plaintiff failed to introduce into evidence a copy of the 5-year/500,000-mile warranty and never proved or sought to prove the terms and conditions of the warranty — i.e., what obligations were created under the warranty — the plaintiff failed, as a matter of law, to prove its breach of warranty claim, and, Cummins argues the trial court erred in submitting the breach of warranty claim to the jury.
Although it is undisputed that the plaintiff never received a written warranty from Cummins, it presented evidence establishing that the buyer's order for the truck it purchased from Great Basin Truck Sales suggested that a 5-year/500,000-mile warranty would be provided by Cummins; that at the time of the sale, Doug Lowry spoke by telephone with someone from Cummins Intermountain about registering the warranty; and that the plaintiff received a letter from Cummins Alabama, Inc., in August 1988 confirming that trucks sold with NTC-444 Cummins engines (as with this truck) would carry a "Custom Registry Plus" warranty valid for 5 years or 500,000 miles. Lowry also testified that he received a packet of information about various warranty plans offered by Cummins, including the "Custom Registry Plus" plan. That evidence was sufficient to establish the existence of a warranty. See, e.g.,Winston Industries, Inc., v. Stuyvesant Ins. Co., 55 Ala. App. 525, 317 So.2d 493 (Ala.Civ.App. 1975), cert. denied,294 Ala. 775, 317 So.2d 500 (1975).
Furthermore, the plaintiff presented testimony from a certified Cummins mechanic, whose training involved learning to make warranty repairs and handling Cummins warranties, that he was instructed by Cummins to determine the problem that existed with a Cummins engine brought in for repairs before determining if the repair was covered by a warranty. The plaintiff also presented testimony from a Cummins representative that, under the Cummins service policy, an engine that failed because of a poor repair practice would not be covered by the warranty, even though it otherwise would have been, but that in order for a poor repair practice to nullify a warranty on a Cummins engine it must first be determined that the poor repair practice led to the engine failure or was the cause of the failure; that the Cummins policy provided that the alleged poor repair practice would be investigated and that if the investigation showed that the engine failure did not result from the poor repair practice, the warranted item would remain under the warranty. That testimony was sufficient to create a fact question for the jury as to whether Cummins breached the warranty by failing to investigate the problem with the engine before determining that the alleged poor repair practice (the alleged honing of the cylinder liners) made the warranty ineffective.
We note Cummins's argument that the cause of the engine problem was a problem with the fuel injectors, which, it says, were not covered under warranty because they were not major component parts; therefore, Cummins argues that the plaintiff presented no evidence that Cummins did not honor the warranty and Cummins argues that the trial court should have directed a verdict on this issue. Although the plaintiff does not dispute that fuel injectors are not major component parts covered under the warranty, the thrust of its breach of warranty argument is that the cause of the engine problem was never determined as required under the warranty. That argument presents a question for the finder of fact.
The measure of damages for breach of warranty arising from the sale of goods is governed by § 7-2-714 and § 7-2-715, Ala. Code 1975. Section 7-2-714 provides in part:
 "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount. . . ."
Section 7-2-715 provides for the recovery of incidental and consequential damages in appropriate cases: *Page 766 
 "(1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
 "(2) Consequential damages resulting from the seller's breach include:
 "(a) Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise. . . ."
These sections are consistent with the general rule, which restricts the recovery of lost profits on claims of damage to a commercial vehicle where, as in this case, there was no evidence that a substitute truck was not available for lease or rent during the time the truck was in for repairs, but which permits the recovery of the market value of a commercial vehicle's use or hire during the time required to make repairs and permits the recovery of the cost of repairs. See Taylor v.Mason, 390 So.2d 1046 (Ala. 1980); Wilson Co. v. Sims,250 Ala. 414, 34 So.2d 689 (1948); Rowell v. Treadwell Ford, Inc.,511 F.2d 164 (5th Cir. 1975) (citing Wilson Co. v. Sims); see, also, C. Gamble, Alabama Law of Damages § 36-5 (2d ed. 1988) ("[l]ost profits incurred while a plaintiff's vehicle is being repaired [do] not generally constitute a correct measure of damages").
We reverse the judgment and remand this case for a new trial consistent with this opinion.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, KENNEDY and COOK, JJ., concur.